RAINWATER *v.* CHILDRESS.

Opinion delivered December 20, 1915.

1. CORPORATIONS—DE FACTO CORPORATION—SUBSCRIPTION CONTRACT—LIABILITY OF SIGNERS.—The signers of a contract agreeing to subscribe for stock, are not liable as stockholders in a *de facto* corporation.

2. CORPORATIONS—FORMATION OF CORPORATION DE JURE.—A strict or substantial compliance with the laws regulating the organization of corporations is necessary in order to constitute a corporation *de jure*.

3. CORPORATIONS—FORMATION OF CORPORATION DE FACTO.—To constitute a corporation *de facto*, there must be a colorable compliance with the statute, and use of the supposed corporate franchise in good faith.

4. SUBSCRIPTION CONTRACTS—LIABILITY OF SUBSCRIBERS—PARTNERSHIP.—The subscribers of a subscription list, whereby they agreed to pay certain sums toward the formation of a canning factory, will not be held liable as partners in the business, when they signed no articles of association, incorporation or partnership, and where they did not know that anyone was attempting to run the business as a partnership.

5. PARTNERSHIP—SUBSCRIBERS TO STOCK—CONDUCTING BUSINESS.—Certain subscribers to stock in a canning factory to be established, will be held liable as partners where they were actively engaged in establishing the canning factory and in operating it after it was established, and with the knowledge that no attempt had been made to incorporate it.

6. SUBSCRIPTION CONTRACT—EXERCISE OF POWERS.—Where a subscription contract provided only that the funds subscribed would be used in putting a canning factory into operation, a subscriber thereto will not be liable for the debts of the organization, incurred by reason of its undertaking to raise tomatoes also.

Appeal from Conway Chancery Court; *J. T. Bullock,* Special Chancellor; affirmed.

STATEMENT BY THE COURT.

H. H. Childress sued Lloyd Rainwater and about twenty-five other persons for contribution on a debt which he alleges he and the defendants became liable for as partners. The defendants denied liability. The material facts necessary for a determination of the issues raised by the appeal are as follows:

In the fall of 1908 a proposition was made by a promoter to the Board of Trade of Morrilton, Arkansas, to establish a canning factory if a bonus of $5,000 should be given him. Some of the citizens of the town of Morrilton assembled at the Board of Trade rooms to consider the proposition, and after a discussion of the matter decided to themselves organize a corporation for the purpose of establishing a canning factory. A subscription list stating that the signers would pay the amount set opposite their names toward the establishment of a canning factory was written out and the plaintiff and defendants and some other citizens of the town of Morrilton signed the subscription contract. The amount subscribed was about $2,275. It was the intention of the subscribers that a corporation should be formed, but nothing was done toward that end except to procure the signers to the subscription contract as above stated. Some of the subscribers, among whom were H. H. Childress, Lloyd Rainwater, S. W. Simpson and Walter Smith, met, and, after looking at the signatures, decided that the signers were good for the amount subscribed by them and would pay it. They thought that the establishment of a canning factory would be a paying proposition. Simpson, Childress and Smith were appointed as a committee to examine the machinery of other canning factories and to purchase machinery for their own plant. After an examination of canning factories at other places, they purchased machinery of the value of about $1,500 and established a canning factory in the town of Morrilton. A committee was appointed to collect some of the subscriptions and the amount collected was applied toward the payment of the machinery. Rain-

water was cashier of the Bank of Morrilton and agreed that his bank would finance the proposition if Childress was made manager. By common consent of all the interested parties, Childress became manager of the canning factory, and it was operated for the season of 1909. It turned out that the factory was not a profitable enterprise, this being due partly to the fact that the farmers did not raise sufficient tomatoes with which to operate it. So in the spring of 1910 it was agreed to rent land and grow tomatoes with which to operate the plant. Simpson objected to this course, and declared that he would have nothing to do with the venture of renting land to grow tomatoes. Childress and others, however, rented the land and proceeded to raise tomatoes to be used by the canning factory. This also proved to be a losing venture.

Lloyd Rainwater was absent from the State when the agreement to raise tomatoes was reached but afterward returned home and proceeded to finance the business just as if he had been present when the venture was decided upon.

In 1912 the Bank of Morrilton sued H. H. Childress, Lloyd Rainwater, its cashier, and all the other defendants herein for the indebtedness due the bank by the canning factory. The bank took a nonsuit as to all the parties except H. H. Childress, and judgment was rendered against him in favor of the bank for the amount sued for. Childress paid the judgment and this suit was instituted by him for contribution against the other subscribers to the stock in the canning factory on the ground that a partnership existed between them.

The whole machinery of the canning factory was sold to satisfy a debt incurred by the factory in its operation and Childress became the purchaser thereof for the sum of $152.90.

Other facts will be referred to in the opinion.

As to all of the defendants who had paid for their stock prior to the institution of this suit, the court dismissed the complaint of the plaintiffs for want of equity.

As to the subscribers who had not paid their subscriptions the court rendered judgment in favor of the plaintiff for the amount subscribed by each one. The court found that H. H. Childress, Lloyd Rainwater and S. W. Simpson actively promoted and engaged in the business of the canning factory, that they adopted and used the name of "The Morrilton Canning Factory" and that they were primarily liable for the indebtedness up to the 10th of April, 1910, and judgment was rendered against them for that amount.

The court further held that Childress and Rainwater engaged in the business of growing tomatoes in 1910 and incurred further indebtedness in that enterprise and that Simpson protested against going into that business and was not liable for any of the indebtedness so contracted. The court held that Childress and Lloyd Rainwater were jointly liable to the bank for that indebtedness and judgment was rendered in favor of Childress against Rainwater for half the amount. The court also held that Childress purchased the machinery of the canning factory at an inadequate price and that he held the same in trust for the other parties interested. A decree was entered accordingly and both Childress and Rainwater have appealed. The defendants against whom judgment was rendered on the subscription contract have also appealed.

*Sellers & Sellers,* for appellant.

1. The court erred in holding only Simpson and Rainwater liable as partners with the appellee, Childress. If the defendants were not liable as partners, neither is appellant.

2. The growing of a tomato crop was not the occasion of any greater loss than operating the plant. The growing of this crop was not outside the partnership business. Partnership agreements may be changed by mutual consent, and even written agreements of partnership may be varied by the conduct of the interested parties. 44 Ark. 34; 50 *Id.* 196.

3. The growing of a tomato crop was within the scope of the business, and was a necessity. 76 Ark. 4. No bad faith is shown.

4. The decree of the chancellor is based upon issues never raised. Nowhere in the pleadings has it been contended that Simpson and appellant were alone liable with Childress up to the time of engaging in the farming enterprise, and nowhere is it contended that, after that time, appellant alone was liable with appellee.

5. Were defendants partners? It does not take an express agreement to form a partnership in order to make defendants liable as partners between themselves. 30 Cyc. 357, note 51, 360, 363. This citation covers the entire case. No express agreement to enter into a partnership was necessary. Considering the original subscription list together with all the acts and conduct of all parties, their acquiescence in all that was done, all the defendants were liable. 35 Ark. 144; 62 *Id.* 229; 59 Am. Dec. 712, and note; 92 N. W. 99; 22 Am. & Eng. Enc. Law, 26-b.

Only implied agreements may bind parties as partners, and this in actions between themselves. 9 Enc. of Ev. 551, note 47. If the growing of the tomato crop was beyond the scope of the partnership it was ratified. 103 Ark. 283, 287; 30 Cyc. 357.

*W. P. Strait,* for appellees.

1. Appellees were not liable as partners (1) to the Bank of Morrilton, to whose rights H. H. Childress attempts to be subrogated, and (2) certainly not as partners with Childress. 38 Mich. 779; 44 Cal. 440; 24 Am. St. 887; 101 U. S. 392; 117 Mass. 476; Taylor on Corporations, § 148; 11 L. R. A. 515; 7 Cush. 188; 91 Ark. 26; 54 *Id.* 384; 30 Cyc. 383-5, 394; 80 Ark. 23; 32 *Id.* 733; 29 *Id.* 512. To hold one liable as a partner who is not, in fact, a partner, it must appear that the alleged act of holding out was done by him or with his assent. 30 Cyc. 393; 67 Ga. 541; 6 J. J. Marsh, 609; 23 Mich. 484; 28 Mo. 94; 11 L. R. A. 136; 34 N. Y. Supp. 328; 40 Am. Rep. 465.

One who relies on the acts or conduct of another as holding himself out as a member of a partnership must show that he extended credit on the faith of such reliance. 80 Ark. 23; 93 *Id.* 305. The bank is not a third party, extending credit on the presumption that appellees were partners. Rainwater, the cashier, knew there was no such partnership.

Persons who have entered into a contract to become partners at some future time, etc., do not become so until the contingency happens. 30 Cyc. 358.

They were not liable as stockholders to a *de facto* corporation. No steps at all were taken. Appellees merely signed a subscription list for stock in a corporation—never formed. 7 Rul. C. Law, 352; 17 L. R. A. 555. There was no liability as partners.

2. No partnership was ever intended. None was ever entered into or created. Partnership relation never arises by operation of law. 70 Miss. 193; 66 N. Y. 424; 37 N. Y. Supp. 751. Nor can parties be made to assume the relation of partners, nor the liability, when their purpose was not to assume such partnership. 116 U. S. 461; 118 *Id.* 211. It must have been the intention of the parties themselves, to form a partnership. 93 Ark. 526; 63 *Id.* 526; 74 *Id.* 437; 74 *Id.* 615; 44 *Id.* 423; 94 *Id.* 505.

*Edward Gordon,* for appellee, H. H. Childress.

1. One who holds himself out as a partner, and thereby another is induced to extend credit or incur liability, is liable as a partner. 80 Ark. 23; 93 *Id.* 301.

2. A written agreement can not be varied by parol evidence. 92 Ark. 504.

3. The evidence is conclusive that all the parties intended to incorporate; when they failed to do so they became individually liable. 1 Thomp. on Corp., § 513; 10 Cyc. 657; 35 Ark. 144; 62 *Id.* 229; 57 N. Y. 26; 49 Am. St. 300, and other citations.

Each member of the proposed corporation was liable for his *pro rata* share of the indebtedness. 57 N. Y. 23; 60 Ill. 454; 12 N. J. Eq. 31; 78 Ind. 344; 4 Neb. 416;

48 Minn. 174; 4 Neb. 416; 8 N. W. 772; 50 *Id.* 1117; 25 *Id.* 799; 20 Atl. 457; 56 Ia. 104.

HART, J., (after stating the facts).   Counsel for the defendants other than Rainwater insist in their brief that the decree be affirmed.   Therefore, we shall assume that the facts justified the court in rendering the decree as to them and no further consideration of that branch of the case will be given.

Counsel for the plaintiff Childress and the defendant Lloyd Rainwater both urge that the defendants were jointly liable for the debt incurred by the canning factory as partners, but we do not agree with them in that contention.   All of the signers to the subscription contract stated that it was the intention of the parties to form a corporation for the purpose of operating a canning factory in the town of Morrilton.   Some of the defendants said that they subscribed for stock in such a corporation and that they took no further part looking toward the organization of the corporation or in the management of the canning factory after it was put in operation.   Other defendants stated that they did not intend to subscribe for stock in the corporation but only intended to donate the amount subscribed by them for the purpose of procuring the establishment of a canning factory at Morrilton.   Childress, Lloyd Rainwater, S. W. Simpson and Walter Smith actively engaged in establishing and operating the canning factory.   Walter Smith was not made a party to the suit and for that reason his liability, if any, need not be further considered.

(1-2-3)  It may be stated here that the signers to the subscription contract are not liable as stockholders in a *de facto* corporation.   The effect of our decisions in *Whipple* v. *Tuxworth,* 81 Ark. 391, and *Bank of Midland* v. *Harris,* 114 Ark. 344, is to hold that a strict or substantial compliance with the laws regulating the organization of corporations is necessary to constitute a corporation *de jure.*   To constitute a corporation *de facto,* there need not be a strict or substantial compliance with the statute, but there must be a colorable compliance with the statute—that is to say, there must be color of a legal

organization under the statutes and user of the supposed corporate franchise in good faith. Courts differ among themselves as to how much must be done in order to constitute a corporation *de facto*. But all of the courts agree that some of the statutory steps must be taken in an honest attempt to comply with the requirements of the law and exercise by the associates of the corporate powers. See *Harrill* v. *Davis,* 22 L. R. A. (N. S.) 1153, 168 Fed. 187; and Modern American Law, Vol. 9, page 52, *et seq.*

Here there was no attempt whatever to comply with the statutes relating to the formation of corporation. It is not enough that there is a law under which the subscribers might have incorporated and that they agreed to form a corporation. They had not even signed articles of incorporation.

(4) None of the defendants to this suit, except Lloyd Rainwater, H. H. Childress and S. W. Simpson, were instrumental in establishing and operating the canning factory at Morrilton. It is true they lived in the town of Morrilton and knew that the canning factory was in operation, but they supposed it had been organized as a corporation and that the parties establishing it had done so on their own account, trusting to make it a paying business with the amount collected on the subscription contracts. They took no part in the business transacted by the canning factory, either as principals, partners, agents, directors or otherwise. They did not sign articles of association, incorporation or partnership. They did not know that Childress, Rainwater and Simpson were attempting to run the business as a partnership. Under these circumstances, we do not think the court erred in refusing to hold them liable as partners. See 7 R. C. L., § 332; *Rutherford* v. *Hill,* 22 Ore. 218, 29 Pac. 546, 29 A. S. R. 596, 17 L. R. A. 549; *Seacord* v. *Pendleton,* 55 Hun. (N.Y.) 579; *Fuller* v. *Rowe,* 57 N. Y. Rep. 23.

The last two cases were cited in *Harrill* v. *Davis, supra,* and Judge Sanborn, who delivered the opinion of the court, said: "There are cases in which stockholders

who took no active part in the business of a pretended corporation which was acting without any charter or filed articles, who supposed that the corporation was duly organized, have been held exempt from individual liability for the debts incurred; but if they had been actively conducting its business with knowledge of its lack of incorporation, those decisions must have been otherwise.''

(5)  In the application of these principles we hold that Childress, Rainwater and Simpson are liable as partners because they were actively engaged in establishing the canning factory and in operating it after it was established and with the knowledge that no attempt had been made to incorporate it.

(6)  We are also of the opinion that the court was right in holding that Simpson was not liable for the debt incurred in planting and growing tomatoes. As above stated, the business established was that of operating a canning factory in the town of Morrilton. No other purpose was mentioned in the subscription contract or by the parties at the time the canning factory was put in operation. Of course, it is the general rule that when express power is granted to do a particular thing, this carries with it by implication the right to do any act which may be found reasonably necessary to effect the power expressly granted. *El Dorado Farmers' Union Warehouse Co.* v. *Eubanks,* 94 Ark. 355.

The implied power must be used to carry out the powers expressly granted; and can in no instance be availed of to enlarge the express powers.

A person might have been willing to subscribe to the stock in a corporation organizing for the purpose of erecting and operating a canning factory or willing to enter into a partnership for that purpose and still be wholly unwilling to enter into a corporation, firm or partnership for the purpose of growing tomatoes. The two enterprises are separate and distinct. The new enterprise enlarged the original undertaking and added new responsibilities and new hazards upon the parties. Therefore, the parties could not force Simpson against his will

to go into the business of growing tomatoes, and he is not liable for the debts incurred in carrying out that enterprise.

The record in this case is long and many witnesses were examined and cross-examined at length by counsel for the respective parties; but we think we have in the foregoing opinion set out, substantially, the testimony bearing upon the relation of the parties to each other and have carefully considered the facts as applicable to the law bearing upon them.

We are of the opinion that the decree of the chancellor should be affirmed, and it is so ordered.