DOYLE-KIDD DRY GOODS COMPANY *v.* A. W. KENNEDY & COMPANY.

Opinion delivered July 10, 1922.

1. CORPORATIONS—DE FACTO CORPORATION DEFINED.—To constitute a corporation *de facto*, there need not be a strict or substantial compliance with the statutes, but there must be a colorable compliance therewith, that is, a color of a legal organization under the statutes and user of the proposed corporate franchise in good faith.

2. PARTNERSHIP—LIABILITY OF MEMBERS OF JOINT STOCK COMPANY.— Persons who associated themselves in business for the purpose of organizing a corporation, and who participated in the management of the business through a board of directors, but who failed in any way to comply with the statutory requirements as to formation of corporations or to limit their liability as partners, as provided by ch. 137 of Crawford & Moses' Dig., are liable as partners for the debts contracted by such managers; the organization being a common-law joint-stock company.

Appeal from Howard Circuit Court; *Percy Steel,* special judge; reversed.

*Graves & McFaddin,* for appellant.

A joint stock company was created by the articles of agreement entered into by the parties. 125 Ark. 146; 63 Ark. 518; 37 Ark. 308; 138 Ark. 281; 137 Ark. 80; 63 Ark. 581.

Where the language of a contract, when considered as a whole, creates the partnership relation, then it should be so construed, even though the parties expressly provide that such was not their intention. 141 Ill. 124; 30 Am. Dec. 596; 30 N. E. 442; 20 Ore. 132; 11 L. R. A. 149; 30 Cyc. 360. The rule is that members of a voluntary association of individuals or an unincorporated company are to be considered as partners in their relation to third persons, and it is immaterial that the proportions in the ownership of the associates in the common property are represented by certificates having a similarity to shares of stock in a corporation, or that the members call themselves stockholders and believe they incur no liability for losses beyond the actual amount paid for the shares. 89 N. E. 434; 133 A. S. R. 296; 12 Am. Dec. 495; 28 Am. Dec. 650; 49 Am. Rep. 313; 115 A. S. R. 407; 91 N. E. 439; 98 Tenn. 109; 60 A. S. A. 842; 36 L. R. A. 282; 303 Mass. 311; 89 N. E. 434; 133 A. S. R. 296; 128 Mass. 445; 124 N. E. 32; 23 Cyc. 474. Stockholders who take no active part in the business of a pretended corporation, which is acting without any charter or filed articles, and who supposed the corporation had been duly organized, are exempt from individual liability for debts incurred. 55 Hun 579; 57 N. Y. 23. Defendants are liable for the acts of Kennedy on the principle of agency, as distinct from, and in addition to, the matter of partnership liablity. 111 Ark. 236; 117 Ark. 176.

*W. P. Feazel,* for appellees.

The partnership relation is always created by agreement between the parties and never by operation of law. 54 Ark. 384; 70 Miss. 193; 66 N. Y. 424; 116 U. S. 461; 118 U. S. 211. In determining whether or not the rela-

tion of partnership was created between the parties, their intention must control. 137 Ark. 8; 44 Ark. 423; 63 Ark. 518; 77 Ark. 390; 74 Ark. 437; 87 Ark. 412; 138 Ark. 281; 91 Ark. 206; Story on Partnership, § 49. The mere fact that persons associate themselves together to promote or organize a corporation does not make such person partners for the reason there is no agreement or intention to enter into such relation. 8 Col. App. 110; 96 Ill. App. 200; 9 Mass. 900; 135 Mass. 140; 34 Minn. 355; 62 Minn. 332; 60 Ohio St. 288; 123 Pa. 259; 158 Pa. 197; 121 Ark. 545.

WOOD, J. The Doyle-Kidd Dry Goods Company is a domestic corporation, and will be hereafter referred to as the appellant. The appellant instituted this action against A. W. Kennedy, W. G. Gardner, H. B. Gardner, Jesse Johns, H. T. Smith, J. S. Harrison and R. B. Harrison, as copartners trading under the firm name of A. W. Kennedy & Company. The parties named above, except Kennedy, will hereafter be referred to as the appellees. A. W. Kennedy & Company will be hereafter referred to as the company. The appellant alleged in its complaint that it was engaged in the wholesale dry goods business in the city of Little Rock, Pulaski County, Arkansas, and that the appellees were partners trading under the firm name of the company; that the appellees were indebted to the appellant in the sum of $1,272.18 for merchandise purchased by them. Appellant alleged that the merchandise was purchased on the 12th of March, ——, and at various other times, as shown in an itemized account, which is made an exhibit to its complaint. Kennedy did not answer the complaint, and judgment by default was rendered against him. He has not appealed, and thus passes out of the case. The appellees, in their answer, denied that they were indebted to the appellant in any sum whatever. They set up that some time in the month of November, 1919, A. W. Kennedy proposed to form a joint stock company for the purpose of conducting a mercantile business in their community in Howard County,

the stock in the company to be sold at $100 per share, and that the appellees purchased stock in the company as represented by the respective number of shares taken by each of the appellees, which they specified, amounting in the aggregate to the sum of $6,000. The appellees alleged that it was understood between them and Kennedy at the time they purchased the shares that the business would be incorporated, and that Kennedy should have the exclusive management and operation of the business, subject to the advice of the board of directors; that the appellees took no part toward the organization of the corporation or the management and direction of the business after it was put in operation. They alleged that they did not intend to form a partnership and did not hold themselves out as partners, and did not sign any articles of association, incorporation, or partnership. They alleged that the business was not incorporated, and that, while they knew that the business was in operation, they supposed it had been incorporated by Kennedy, and did not know that Kennedy was attempting to run the business as a partnership, and did not know that it had not been incorporated until immediately prior to the institution of this action. They therefore denied liability.

The cause was, by consent, tried by the court sitting as a jury. The facts developed at the hearing were substantially as follows: A. W. Kennedy, who had been running a small business in the rural community where the appellees resided, agreed with the appellees, who were farmers, that they would establish a new business. Kennedy prepared a document called "articles of agreement" which specified that the stockholders agreed to form a joint stock company for the purpose of conducting a general mercantile business to be styled A. W. Kennedy & Company, stock in the company to be sold at $100 per share. Kennedy was to be the president and general manager. The stockholders were to elect three directors, who were to advise with the manager in the conduct of the business. The manager was to do all the buying and sell-

ing and keep an accurate account of sales and expenditures, and furnish the directors a report of the business at any time desired. Kennedy was to receive as compensation for his services one-half of the profits of the business after all expenses were paid. The articles further provided that dividends should be declared the first of January, 1921, and that no stockholder should withdraw his stock except the first of each year, without the consent of the majority of the stockholders. The manager was to give a receipt showing that the entire assets of the corporation should stand as security to each stockholder for the amount of his investment, and the manager was to make bond to cover the full amount of the stock. These articles of agreement were circulated among the people, and the appellees and others paid in cash varying sums amounting in the aggregate to $6,000. The several amounts were paid by the appellees and others to Kennedy, who issued to them a receipt for so many shares in the company at the rate of $100 per share, according to the amounts severally paid. After the above sum had been paid in, Kennedy called a meeting of those who had subscribed and paid the fund and they elected the three directors, as provided in the articles of agreement, and these directors signed the articles of agreement. The other stockholders who had paid did not sign, it being understood that the signatures of the three directors were sufficient. The directors met from time to time in an advisory capacity to Kennedy, who was the manager and had sole control of the business. When the appellant was approached by Kennedy to purchase merchandise, it inquired of him what kind of a company he had, and he told the appellant that it was a joint stock company with a paid-up capital of $6,000, and he named the appellees as stockholders in the company. In March, 1920, after the company had been formed and had been operated for some time under the above management, there was a meeting of the directors and some of the stockholders. The directors met from time to time, and some of the

stockholders met with them at these meetings. No minutes were kept. At one of the meetings one of the original directors resigned, and W. G. Gardner, one of the appellees, was elected in his place. At the meeting in March, 1920, it was discovered that Kennedy had not incorporated, and it was again decided that the business should be incorporated. The undisputed testimony shows that it was the purpose of the appellees to have the business incorporated in order that they might be severally protected from any liability in excess of the amounts that they had subscribed and paid for shares of stock in the proposed corporation.

In January, 1921, the stockholders had a meeting at which all of the appellees were present except Smith. At that meeting Kennedy submitted a statement of the business of the company. Upon ascertaining that Kennedy was unable to pay any dividends, and that he had not had the business incorporated as he had promised, the appellees sold their interest in the business to him. He paid some of them a small amount in cash and executed his notes for the balance, which notes the appellees still have. Kennedy continued the business in the name of the company until the summer of 1921, when his business failed. The appellant sent a note to Smith, one of the appellees, for the amount of its debt, with a request that Smith and the other appellees sign the same. When this note was presented, the appellees ascertained that Kennedy had not incorporated, and that the business was a failure. They refused to sign the note.

Upon substantially the above facts the court found the facts and the law in favor of the appellees and entered a judgment in their favor against the appellant, dismissing its action, and for costs, from which judgment is this appeal.

The trial court, in one of its declarations of law, announced that "A. W. Kennedy & Company was in no sense at any time a corporation either *de facto* or *de jure*." In this declaration the trial court was correct.

Because, as is said in *Rainwater* v. *Childress,* 121 Ark. 541, at page 547: "To constitute a corporation *de facto,* there need not be a strict or substantial compliance with the statute, but there must be a colorable compliance with the statute—that is to say, there must be color of a legal organization under the statutes and user of the supposed corporate franchise in good faith. Courts differ among themselves as to how much must be done in order to constitute a corporation *de facto.* But all of the courts agree that some of the statutory steps must be taken in an honest attempt to comply with the requirements of the law and exercised by the associates of the corporate powers."

The undisputed testimony shows that there was no attempt upon the part of any of the appellees individually, or Kennedy acting for them, to comply with any of the requirements of the law as to the formation of corporations prescribed in chapter 38, C. & M. Digest, secs. 1700-01-11. The appellees therefore cannot be held liable as partners on the ground that they had associated themselves together for the purpose of transacting a general mercantile business as a corporation, and had taken some steps in compliance with the statute looking to the formation of the corporation, and that they had done business in the corporate name but without perfecting the corporate organization.

In *Garnett* v. *Richardson,* 34 Ark. 144, and *Morse* v. *Burkhart Mfg. Co., ante* p. 362, we held that those who associated themselves together for the purpose of organizing a corporation and who have taken some of the statutory steps looking to that end, and who have transacted business and incurred liabilities in the corporate name, but without finally completing the corporate entity, are responsible as partners for the debts incurred by the *de facto* corporation. The liability of the appellees as partners cannot be predicated upon the doctrine of these cases because, as we have seen, the uncontroverted facts show that they had made no effort whatever to comply

with the requirements of the law. They had not taken any of the steps prescribed by the statute for the organization of a business corporation.

It does not follow, however, that, because they were not liable as partners under the doctrine of the cases last above cited, they are not liable as partners at all. Under our law, when three or more persons shall associate themselves together for the purpose of carrying on a business in which they are to share in the profits and losses, they can only transact such business as a corporation or as a partnership. If they desire to conduct a business as a partnership and to limit their liability, they may do so under the provisions of chapter 137, C. & M. Digest; or, if they prefer to conduct the business as a corporation and to have their respective liabilities limited in proportion to the capital invested in the joint enterprise, then they may organize and do business as a corporation under the provisions of chapter 38 of C. & M. Digest, *supra*. But there is no middle ground between these two where persons may associate to carry on a business and not be liable for the debts incurred by that business, either as partners, or as stockholders in a corporation. As we have shown, the appellees are not liable as stockholders in a corporation, either *de facto* or *de jure*. There is no pretense that they formed a limited partnership under the statute, and therefore, if liable at all, and they are, their liability is governed by the general law pertaining to partnerships. While our statute makes no provision for the existence of joint stock companies *eo nomine,* they are not prohibited, and a mercantile business may be conducted in that form as a partnership.

We are convinced that the facts of this record show conclusively that the company in which the appellees were stockholders was a typical common-law joint stock company, according to the definition of that term as given by standard text-writers and by courts in various adjudications. "A joint stock company is an association of individuals for purposes of profit, possessing a common

capital contributed by the members composing it, such capital being divided into shares of which each member possesses one or more, and which are transferable by the owner, the business of the association being under the control of certain selected individuals called directors." 20 R. C. L. p. 321; 23 Cyc. 467, and cases cited in notes; see also Wrightington, Unincorporated Associations, secs. 10, 12, 14, 15; 2 Lindley on Partnership, ch. 5, p. 1532, and notes; Cook on Corporations, chap. 1, sec. 1, p. 3, note; ch. 29, sec. 504, p. 1465, and notes. Lindley says: "Unincorporated joint stock companies, as they exist in the United States, are, with the exception perhaps of those organized under the statutes of New York, merely copartnerships; and, as a general thing, subject to all the rules governing that branch of the law. The shareholders are therefore each personally liable for all the debts of the company, no matter what the private arrangements among themselves may be; and this notwithstanding they attempt to arrogate to themselves the attributes of copartners by doing business under a corporate name and appointing certain of their members to act as directors." Ch. 5, p. 1532, sec. 1.

In 20 R. C. L. at page 808, the authors make the following statement: "Nevertheless at common law voluntary associations were regarded as partnerships in the transaction of business. And the rule generally recognized today is that the members of the voluntary association of individuals or of an unincorporated company are to be considered as partners in their relations to third persons, and it is immaterial that the proportions of ownership of the associates in the common property are represented by certificates having a similarity to shares of stock in a corporation, or that the members call themselves stockholders and believe that they incur no liability for losses beyond the amount paid for the shares." To support the text the authors cite the following cases: *Ashley* v. *Downing* (Mass.) 89 N. E. 434, 133 A. S. R. 296; *Lynch* v. *Postlethwaite* (La.), 12 Am. Dec. 495, and

cases cited in note; *Babb* v. *Reed* (Pa.), 28 Am. Dec. 650; *Farnum* v. *Patch* (N. H.), 49 Am. Rep., 313.

In *Ashley* v. *Downing, supra,* (203 Mass. 311), it is said: "A voluntary unincorporated association of individuals for the purpose of conducting a business whose proportions of ownership in the assets are represented by certificates having similarity to shares of stock in a corporation has repeatedly and uniformly been held to be a partnership." The facts of that case are very similar to the case in hand and cannot be distinquished in principle. See also *Brotherton* v. *Gilchrist,* 144 Mich. 274, 115 A. S. R. 397, and exhaustive case notes at p. 407; *Hossack* v. *Ottawa Devel. Co.* (Ill.) 91 N. E. 439; *Carter* v. *McClure,* 98 Tenn. 109, 60 A. S. R. 842, 36 L. R. A. 282.

The appellees rely upon the case of *Rainwater* v. *Childress, supra,* to support their contention that the appellees are not liable as partners. In that case, as in this, there was no attempt whatever to comply with the statutes relating to the formation of corporations. Some of the defendants subscribed for stock in a corporation, but took no further part looking toward the organization of the corporation or the management of the canning factory after it was put in operation. Other defendants did not intend to subscribe for stock in a corporation, but only intended to donate the amount subscribed by them to have a canning factory established at Morrilton. We held that such defendants are not liable as partners because "they took no part in the business transacted by the canning factory, either as principals, partners, agents, directors, or otherwise." But three other parties, Childress, Rainwater, and Simpson, were held "liable as partners, because they were actively engaged in establishing the canning factory, and in operating it after it was established, and with the knowledge that no attempt had been made to incorporate it."

Now, it cannot be said that the appellees in the present case intended to donate any funds to the company; nor can it be said that they paid their respective

sums to Kennedy, but took no further part in the formation of the company and the management of the business, either as "principals, partners, agents, directors or otherwise." On the contrary, the facts set out above show that all of the appellees not only paid in their money but they took further interest in the establishment of the business and in the conduct thereof. They selected directors; they all knew of the articles of agreement and knew that they were signed by the three directors for the appellees. They attended various meetings, and they ascertained that the business had not been incorporated as they contemplated. They consulted with Kennedy and advised with him as to the buying out of another firm (Bedwell & Hughes) at Center Point, Arkansas. They, through their directors, advised with Kennedy as to the employment of a certain clerk in the store, and finally, after they ascertained that the business was not prosperous, they sold their interest to Kennedy. An analysis and comparison of the facts of this record with the facts in *Rainwater* v. *Childress, supra,* will discover that, while the appellees were not as active in the establishment and conduct of the business in this case as were Rainwater, Childress and Simpson in that case, nevertheless the difference is only in degree and not in principle. The relation of the appellees to the company in the present case, in principle, was like that of Rainwater, Childress and Simpson to the canning factory in that case. That case is certainly authority for the doctrine that where parties associate, intending to form a corporation, and join hands and capital in the conduct of the business under a name assumed by them, but without attempting to incorporate, they are liable as partners to third parties for the debts incurred. We conclude, therefore, that the case of *Rainwater* v. *Childress, supra,* is authority for holding the appellees liable in the present case. Learned counsel for the appellees quote and rely upon the doctrine announced by Judge STORY in sec. 49 of his work on Partnership, as follows: "In short, the true rule, *ex aequo et bono,* would seem to

be, that the intention and agreement of the parties themselves should govern in all cases. If they intend to form a partnership in the capital stock, or in the profits, or in both, then that same rule should apply in favor of third persons, even if the agreement was unknown to them, and, on the other hand, if no such partnership was intended between the parties, then there should be none as to third parties, unless the parties held themselves out as partners to the public, or their conduct operated as a fraud or deceit upon third persons."

We recognize that the above is the rule in many jurisdictions. See cases cited in appellees' brief. But our court has taken a definite stand contrary to the above doctrine as to the stockholders in a *de facto* corporation and holds that such stockholders are liable as partners. *Morse* v. *Burkhart Mfg. Co.*, and cases there cited. If stockholders in a *de facto* corporation are liable as partners, then it occurs to us, *a fortiori,* that the stockholders in a joint stock company also would be liable as partners to third parties for the debts incurred by such company. Such unquestionably is the effect of our own decisions. *Rainwater* v. *Childress, supra;* see also, *Pierce* v. *Scott*, 37 Ark. 308. These are supported by able adjudications of other jurisdictions as shown by the cases already cited.

One of the most illuminating of these cases is that of *Carter* v. *McClure, supra.* It is unnecessary to pursue the subject further or to discuss the rulings of the trial court upon the several declarations of law. These rulings were not in harmony with the law as above announced. The judgment is therefore reversed. The amount of appellant's account is not challenged, and, inasmuch as the cause seems to have been fully developed on the facts, judgment will be entered here in favor of the appellant against the appellees for the amount claimed.

HART, J., dissenting.