HARRIS *v.* ASHDOWN POTATO CURING ASSOCIATION.

Opinion delivered June 14, 1926.

1. ASSOCIATIONS—NOTE—EVIDENCE OF LIABILITY.—In an action against alleged subscribers to an association on a note executed in the name of the association, it was competent to prove anything the parties said or did in formation of the association, in order to determine its nature, and to show that words in the articles of association indicating an attempt to form a corporation were erased and others adopted which could be construed as an intention to form an unincorporated association.

2. ASSOCIATIONS—EVIDENCE—MATTER OF OPINION.—In an action against alleged subscribers to an association on a note executed in the name of the association, statement of a witness that the word "corporation" was stricken out of the articles of association and the word "association" substituted, because they wanted an association in the nature of a partnership, and not a corporation, *held* properly excluded as being the conclusion of the witness as to what the intention of the parties was.

3. ASSOCIATIONS—EVIDENCE—INTENTION OF SUBSCRIBERS.—In an action against subscribers to an association on notes executed in its name, it was error to exclude evidence that, at a meeting of the subscribers, a vote was taken whether a corporation or an unincorporated association should be formed, and that the latter form of organization was adopted.

4. ASSOCIATIONS—EVIDENCE—INTENTION OF SUBSCRIBERS.—In an action on notes of an association against subscribers thereto, every circumstance tending to show that the subscribers intended to form an unincorporated association, and not a corporation, was competent to establish their liability as partners.

5. APPEAL AND ERROR—EXCLUSION OF EVIDENCE—HARMLESS ERROR.— The exclusion of competent evidence was harmless where

admitted evidence established the fact sought to be established by the excluded evidence.

6. APPEAL AND ERROR—REFUSAL OF INSTRUCTION—HARMLESS ERROR. —Refusal to give an instruction as asked by appellant was harmless where other instructions given contained a complete statement of the law and were as favorable to appellant as the instruction asked.

7. ASSOCIATIONS — INSTRUCTION — APPLICABILITY. — In an action against members of an association on notes executed in the name of the association, an instruction that, if the association was conducting business in the name of a proposed corporation and notes were signed in the name of such proposed corporation, and plaintiff transacted business and accepted notes as notes of the corporation, the jury should find for the defendants, *held* erroneous where there was no evidence that the business was conducted as a corporation.

8. ASSOCIATIONS—ESTOPPEL.—Though the payee of notes executed by an association accepted them under the belief that they were executed by a corporation of the same name, it would not estop her to assert liability against members of the association as part-**ners.**

9. ASSOCIATIONS—LIABILITY OF SUBSCRIBERS.—Where subscribers to a contract for formation of an association intended to form a corporation, but had no part in the operation of the business as a partnership, or in the selection of agents to do so, they are not liable as partners.

10. ASSOCIATIONS—NATURE OF RELATION.—Where subscribers to a contract to form an association made no attempt to incorporate it, the association was not a *de facto* corporation, but a voluntary unincorporated association, which in effect is a partnership.

11. ASSOCIATIONS—LIABILITY OF SUBSCRIBERS—EVIDENCE.—W h e r e there was evidence that defendants subscribed for stock in an unincorporated association for the purpose of building a potato-curing house, an instruction that purchasers of space in the curing house would not be liable was confusing, since, if their subscription was intended for the purpose of organizing an unincorporated association, those participating would be liable for its obligations.

12. ASSOCIATIONS—LIABILITY OF MEMBERS—JURY QUESTION.—In an action against the members of an unincorporated association on notes executed in the name of the association, where certain defendants, not having signed the subscription list, subsequently attended meetings, paid shares of stock, and executed notes for amounts subscribed, the question whether they participated in

the organization of the association so as to make them liable as members, *held* for the jury.

13. ASSOCIATIONS—LIABILITY FOR OBLIGATIONS.—Persons making mere voluntary donations to an unincorporated association, without participating in its organization or operation, are not liable for obligations incurred by the association.

Appeal from Little River Circuit Court; *B. E. Isbell,* Judge; reversed.

*Seth Reynolds,* for appellant.

*DuLaney & Steel* and *Shaver, Shaver & Williams,* for appellee.

McCULLOCH, C. J.    Appellant instituted this action against appellees, who are numerous residents of Little River County, Arkansas, to recover on two promissory notes, executed in the name of Ashdown Potato Curing Association, for borrowed money, it being alleged in the complaint that appellees had voluntarily associated themselves together under that name, without forming a corporation, for the purpose of engaging in the business of curing and preserving potatoes; that appellees were copartners in the business, and that the money for which the notes were executed was borrowed for the purpose of operating the business.    There were originally about sixty defendants, and some of them defaulted, and judgments against them were rendered in favor of appellant, and the cause was continued as to three of the defendants.    The remainder of the defendants filed answers denying the allegations of the complaint with respect to the formation of a partnership and denying that they were in anywise liable on the notes in suit.    On the trial of the case the court directed a verdict in favor of two of the appellees, P. S. Davis and J. R. Wood, and the trial jury returned a verdict in favor of the other appellees.

Each of the notes in suit was for the sum of $1,000, signed by the Ashdown Potato Curing Association, by the president and secretary, and were indorsed by four of the defendants against whom judgments by default were taken below.    One of the notes was executed to

appellant, and the other to her husband, O. Harris, who assigned it to her. The sum of $200 has been paid on one of the notes, and nothing on the other one.

In the early part of the year 1920 a movement was started, for the purpose of encouraging the growing of sweet potatoes, to form some kind of an association to build and operate a potato-curing house, so that sweet potatoes grown by local farmers could be properly prepared and held for market. Pursuant to this effort there was circulated a subscription list with the following caption:

"Ashdown, Arkansas, March 4, 1920.
"Cooperative Sweet Potato Growing and Curing Association:

"I hereby agree to grow the number of acres of sweet potatoes set opposite my name. I further agree to take stock in a potato-curing house at the rate of one dollar per bushel for the number of bushels I expect to cure out. I further agree to market my potatoes cooperatively."

The list was circulated by George M. Johnson, who was then engaged in farm demonstration work in that county, and he secured a large number of signatures. He testified at the trial of the cause as to the authenticity of those signatures, but there is a conflict in the testimony as to whether some of the signatures were properly authorized. Opposite each name on the list there was a specification of the number of bushels that each signer agreed to put in the house. Each of the subscribers was expected to pay in advance the amount indicated in the subscription list, or to execute a note to the association for the amount. There is testimony that a number of persons who did not sign the list either paid to the association an amount to be applied on stock or gave notes. Several of the appellees who did not sign the subscription list made payments or gave notes.

Appellant introduced testimony tending to establish the fact that there were several meetings of the sub-

scribers for the purpose of organizing the association and providing for the construction of a potato-house and its operation. The first meeting was held on May 22, 1920. A temporary organization was made, and the name of the association was selected. A committee was also appointed to "locate and purchase a site for the building and ascertain the cost of erecting a suitable building." At another meeting, on June 5, no business was transacted except to add another individual to the committee appointed at the former meeting. The meeting to complete the organization was held on August 9, 1920, and at that meeting a certain instrument in writing, designated as "Articles of Association," was formally adopted, and the board of directors and other officers were selected to operate the business. There is a conflict in the testimony as to whether all of the appellees attended this meeting, or rather as to which ones attended. It is undisputed, however, that certain of them attended the meeting, and also that certain of the appellees did not attend. These articles of association were never filed for record, and no steps were taken towards incorporating the association until at least a year thereafter, and after the indebtedness involved in this litigation had been incurred. There is a conflict as to whether these particular articles were ever filed at all, the contention of appellant being that the effort to incorporate a year later related to another association and not to the one formed as indicated above.

The officers selected at the meeting referred to above proceeded to make arrangements to carry out the plan, and they borrowed money and executed the two notes in suit. They built the curing-house, and it was operated for a time, but did not prove a success.

It is undisputed that the association known as Ashdown Potato-Curing Association was not incorporated; that no steps were taken to effect a legal incorporation of the association; that it did not constitute a corporation either *de jure* or *de facto* (*Rainwater* v. *Childress*, 121

Ark. 541), and that money was borrowed from appellant and her husband and the notes in suit executed therefor by those who were selected to manage the business of the association. The notes were executed on the same day, September 20, 1920, and the money borrowed was used in the construction of the curing-house.

The case made in the trial below is thus stated in the light most favorable to appellant for the purpose of determining whether or not there was error in the proceedings below.

The principal issues of fact in the trial below related to the intention of the subscribers, whether it was to form a corporation or a partnership, and whether appellees, or any of them, participated in the operation of the business.

There are several assignments of error in regard to the court's ruling in excluding testimony offered by appellant. The court admitted testimony to the effect that the articles of association adopted at the meeting on August 9, 1920, as originally printed and presented, contained in several places the words "corporation" and "incorporation," and that by consent of all present those words were erased and the word "association" interlined in substitution thereof. Appellant attempted to show by witness Johnson, who testified concerning these erasures and interlineations, that the changes were made for the purpose of showing that a partnership was intended to be formed, and not a corporation. Counsel asked the witness whether he knew why the word "corporation" was stricken out and the word "association" interlined, and the answer of the witness was that they wanted "to have an association in the nature of a partnership and not a corporation." The court excluded this testimony, and exception was duly saved. The same thing substantially occurred in the testimony of other witnesses, and the ruling of the court was the same. It was competent to prove anything that the parties said or did in the formation of the association in order to

determine what the nature of the association was, and it was of course competent to show that the words indicating an attempt to form a corporation were erased from the articles adopted and another word substituted which did not express unmistakably such an intention but could be construed, in the light of all the circumstances, as an intention to form an unincorporated association. It would have been competent also to prove what was said and done in the meeting when these changes were made, but the testimony of the witnesses does not go that far. The statement of the witness Johnson was merely his own conclusion as to what the intention of the parties was, and the court properly excluded that statement. Appellant offered to prove by another witness that a vote was taken at the meeting as to whether they would form a corporation or merely an unincorporated association, and the court excluded that testimony. This was error, for, as before stated, appellant had the right to prove any fact or circumstance tending to show the intention of the parties in the formation of the association.

The defense in this action is that there was never any intention to form a partnership, but that, on the contrary, the intention was to form a corporation, and that appellees, or at least some of them, did not, either directly or indirectly, participate in the operation of the business—that they merely signed subscription lists and took stock in a corporation which was never incorporated, and that they did nothing more. This being true, every circumstance which tended to show that they did not intend to form a corporation, but that an unincorporated association was to be formed, was competent to establish liability on the ground that they formed the association as a copartnership in the name used in borrowing money for which these notes were executed.

It is also contended that the court erred in refusing to permit appellant to prove all that the committee appointed by the shareholders did in putting the business

of the association into operation, and it is particularly pointed out that the court excluded the statement of a witness that the committee was directed to confer with a representative of the railroad company for a location of the potato-house. It was competent to prove that the committee put the business into operation by selection of a site, building the house, borrowing money and operating the business, and so the fact that the business was publicly operated throws light on the question of participation of the shareholders in the operation of the business. We do not think, however, that the ruling of the court in excluding this single instance of the activities of the committee was prejudicial, for abundant testimony was introduced tending to show that the officers and managers selected by the shareholders secured a site, built the house and operated the business, and that many, if not all, of the appellees participated in some way in the operation of the business, either directly or indirectly.

Appellant asked for instructions defining partnership, but the court refused those instructions, and gave its own. We think that the instructions given by the court sufficiently defined a partnership, and that there was no error committed by the court in substituting its own instructions for those proposed by appellant.

Appellant requested the court to give the following instruction:

"3. If you should find from the testimony in this case that all the defendants, or any number of them, associated themselves together for the purpose of forming a partnership, and that, in pursuance of this purpose, the articles of association under date of August 9, 1920, were formed, and also, in order to carry out the purpose of the association, the money represented by the two notes introduced in evidence was borrowed by said Baggarly and Park for said association, you will find for the plaintiff against such defendants so associating themselves together."

The court modified the instruction and gave it in the following form:

"If you should find from the testimony in this case that all the defendants, or any number of them, associated themselves together for the purpose of forming a partnership, and the money represented by the two notes introduced in evidence was borrowed by said Baggarly and Park for said association, you will find for the plaintiff against such defendants so associating themselves together."

The instruction as requested by appellant was a correct statement of the law, but no prejudice could have resulted from the exclusion of the words stricken out by the court. That part of the instruction as given by the court made it a complete statement of the law, and was as favorable to appellant as the original instruction.

The court, over the separate objections of appellant, gave the following two, among other, instructions:

"No. 4. You are instructed that if you find from the evidence that the Ashdown Potato-Curing Association, at the time of the execution of the notes alleged in the complaint, was conducting business in the name of a proposed corporation, and the said notes were signed in the name of such proposed corporation, if any, by its president, secretary, or both, and that said association was held out to the public as a corporation, and that the plaintiff, or the original payee of said notes, transacted business with said association and accepted said notes as the notes of a corporation, then, if you so find, you will find for the defendants.

"6. You are instructed that, if you find from the evidence that the defendants, or any of them, signed the subscription contract with the intention to form a corporation for the purpose of operating a potato-curing plant or house, that they took no further part looking towards the organization of the corporation or the operation of the plant after it was put in operation, that they took no part in the business transacted by the plant as

principals, partners, agents or directors, that they did not sign articles of association, incorporation or partnership, but, in good faith, supposed or believed that the corporation was duly organized by the promoters or those actively engaged in the organization thereof, then you will find for such defendants, if any."

Instruction No. 4 was erroneous, and the court erred in giving it. In the first place, there was no evidence tending to show that the business was being conducted "in the name of a proposed corporation," or that appellant "transacted business with said association and accepted said notes as the notes of a corporation." The notes did not purport on their face to have been executed by a corporation. The fact that they were signed in the name of the association by officers did not indicate that the association was a corporation. It could just as well, under that name, have been a common-law joint stock association. *Doyle-Kidd Dry Goods Co. v. Kennedy,* 154 Ark. 573. The promise recited in each of the notes is that "I, we, or either of us promise to pay," etc., and this language refers to one or more individuals as well as to an association, or even a corporation. Certainly the language of the note and the manner of the signature are not sufficient to carry the necessary implication that it was the contract of a corporation acting through its officers. There is no evidence tending to show that appellant or her husband dealt with the association as a corporation and not a voluntary association. The record is entirely silent on that subject, except the contents of the note itself. But, even if there were proof tending to show that appellant accepted the note under the belief that it was executed by a corporation of the name indicated, this would not estop her to assert liability against the members of a copartnership under that name or a common-law joint stock association. The maker of the note, under whatever name employed, was liable thereunder, whether a corporation or individuals doing business under that name, and the fact that the payee of the note was under an erroneous belief as to the identity of

the maker would not absolve the maker or makers from liability. We have held, it is true, that those who hold themselves out as dealing in the name of a corporation are. estopped to deny the corporate existence, but that is a different question from holding that a person who, under mistake, deals with an association as a corporate entity, is estopped from denying the corporate existence. In an action to recover on a written obligation the execution of which is denied by the defendant or defendants, the real question under inquiry is the identity of the obligor, whether it be a corporation, or, if not, who the persons are who assumed to obligate themselves under that name, and, as before stated, a mistake on the part of the obligee as to the identity of the obligor does not work an estoppel. The court erred therefore in giving that instruction.

The next instruction quoted above (No. 6) is substantially in the language of our decision in *Rainwater* v. *Childress, supra.* It was a correct declaration of law, and submits the principal defense tendered by appellees, whose contention was that they did not intend to join in a partnership, but, on the contrary, intended to form a corporation, and took no part, either directly or indirectly, in the operation of the business, which was subsequently put into operation without completion of the corporation project. If it was true that they intended to form a corporation and had no part in the operation of the business or the selection of agents to do so, then they would not be liable as partners in an association in whose activities they did not in fact participate.

The law applicable to this case is fully stated in recent decisions of this court. *Rainwater* v. *Childress, supra; Doyle-Kidd Dry Goods Co.* v. *Kennedy, supra; Morse* v. *Burkhart Mfg. Co.,* 154 Ark. 362. The facts of this case are very similar to those developed in *Doyle-Kidd Dry Goods Co.* v. *Kennedy, supra,* so far as they call for an application of the law. In that case it was said:

"But our court has taken a definite stand contrary to the above doctrine as to the stockholders in a *de facto*

corporation and holds that such stockholders are liable as partners. * * * If stockholders in a *de facto* corporation are liable as partners, then it occurs to us, *a fortiori*, that the stockholders in a joint stock company also would be liable as partners to third parties for the debts incurred by such company. Such unquestionably is the effect of our own decisions."

There was no attempt in the present case, as we have already seen, to incorporate, therefore there was no semblance of a *de facto* corporation.

In *Rainwater* v. *Childress, supra,* we said:

"To constitute a corporation *de facto,* there need not be a strict or substantial compliance with the statute, but there must be a colorable compliance with the statute—that is to say, there must be color of legal organization under the statutes and user of the supposed corporate franchise in good faith. Courts differ among themselves as to how much must be done in order to constitute a corporation *de facto.* But all of the courts agree that some of the statutory steps must be taken in an honest attempt to comply with the requirements of the law and exercise by the associates of the corporate powers. * * * Here there was no attempt whatever to comply with the statutes relating to the formation of a corporation. It is not enough that there is a law under which the subscribers might have incorporated and that they agreed to form a corporation. They had not even signed articles of incorporation."

Now, it may be added that a mere signing of articles of incorporation is not a substantive step in the act of incorporation under the statute. The signing of the agreement constitutes merely a joint obligation of the parties to form a corporation, but it is not a step in the formation of it. The court should have instructed the jury that there was no corporate existence of the Ashdown Potato-Curing Association; that it was a voluntary, unincorporated association, in effect a partnership, and that the only question in the case was the identity of the

persons who composed the association at the time the notes in suit were executed.

Error of the court is also assigned in giving instruction No. 11, which reads as follows:

"You are instructed that the defendants or any other person had the right to buy or rent space in the curing-house for curing their potatoes, and the fact that any one of them did so did not of itself create any liability except to pay for space—and this would not make the purchaser of space liable as a partner merely by reason of such purchase. You will find for any and all defendants who just occupied this relation to the association, if any."

This instruction, we think, was confusing and should not have been given. Of course, the mere purchase of space in the curing-house by one who was not otherwise interested in the business would not constitute a membership in the association, but this instruction might have been, and doubtless was, intended as a declaration that a subscription for stock and space in the curing-house would not of itself make the subscriber a member of the association, even though there was no intention to incorporate. We think that is wrong, for, if the subscription list was intended for the purpose of organization of an unincorporated association, or was afterwards converted into such an organization without effecting incorporation, those who participated in or authorized the business of the unincorporated institution were liable for the obligations of the association. The subscription was not merely for space, but was for stock "at the rate of one dollar per bushel" for the number of bushels promised. Hence it necessarily follows that, if there was to be an unincorporated association, the subscription constituted membership, unless subsequently abandoned before the obligations in suit were incurred.

The court also erred in giving a peremptory instruction in favor of appellees Davis and Wood. These parties did not sign the subscription list, but they subsequently attended the meeting, bought shares of stock

and executed notes for the amount subscribed. The question should have been submitted to the jury whether these parties participated in the organization of the voluntary association so as to make themselves members.

There was evidence tending to show that some of the appellees merely made donations with the express understanding that they were not becoming members of the association. The court submitted that issue to the jury. Of course, if it was a mere voluntary donation, without any participation in the organization or the operation of the business of the association, there would be no liability for obligations incurred by the association.

For the errors indicated the judgment is reversed, and the cause remanded for a new trial.