DENNIS M. O'BRYAN and MARY E. O'BRYAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
O'Bryan v. Commissioner
Docket No. 2863-90
United States Tax Court
T.C. Memo 1991-593; 1991 Tax Ct. Memo LEXIS 643; 62 T.C.M. (CCH) 1347; T.C.M. (RIA) 91593; December 2, 1991, Filed *643 Decision will be entered for the respondent. Gerald H. Lakritz and Steven A. Kohler, for the petitioners. Mark I. Seigel, for the respondent. WRIGHT, Judge. WRIGHT
MEMORANDUM OPINION Respondent determined a deficiency in petitioners' Federal income tax in the amount of $ 49,170.48 for 1986. The issue for decision is whether legal fees earned by petitioner Dennis M. O'Bryan, an attorney operating as a sole proprietor, are includable in his income, or the income of his newly formed personal service corporation. The parties submitted this case fully stipulated pursuant to Rule 122. [1] The stipulation of facts and attached exhibits are incorporated herein. Petitioners resided in Birmingham, Michigan, when their petition was filed. Petitioner (all references to petitioner are to Dennis M. O'Bryan), an attorney since 1979, began *644 practicing law as a sole proprietor during 1984. During August 1986, petitioner changed the form of his law practice from a sole proprietorship to a Michigan personal service corporation named O'Bryan Law Center, P.C. On July 28, 1986, petitioner received a draft drawn to the order of petitioner and Leonard Doster from Norfolk and Western Railway Company (the Norfolk draft) in settlement of Doster's personal injury claim. The Norfolk draft was payable through the Dominion Bank of Roanoke, Virginia. The Norfolk draft was endorsed by petitioner and Doster and deposited in petitioner's client trust account at First of America Bank in Birmingham, Michigan, on July 28, 1986. A representative of First of America Bank informed petitioner that, because the Norfolk draft was an insurance draft drawn on an out-of-State bank, a hold equal to the amount of the Norfolk draft would be placed on the client trust account for no less than 10 days. On August 12, 1986, petitioner drew checks on the client trust account satisfying the terms of the fee agreement between petitioner and Doster. A $ 292,396.31 check was issued to Doster, and a $ 111,877.89 check, representing petitioner's fee, was *645 issued to O'Bryan Law Center, P.C., and deposited into the corporate account of O'Bryan Law Center, P.C., on August 12, 1986. On August 4, 1986, petitioner received a check from Michigan Physicians Mutual Liability Company (the Mutual check) in settlement of a personal injury claim by Lisa Hall, another of petitioner's clients. The Mutual check, which was payable to the order of petitioner and Hall, was endorsed by petitioner and Hall and deposited into petitioner's client trust account at First of America Bank on August 4, 1986. On August 12, 1986, petitioner drew checks on his client trust account satisfying the terms of the fee agreement between petitioner and Hall. A $ 4,914.87 check was issued to Hall, and a $ 4,085.13 check, representing petitioner's fee, was issued to O'Bryan Law Center, P.C., and deposited into its corporate account on August 12, 1986. There were no disputes between either Doster and petitioner or Hall and petitioner about the amounts to be distributed to them under the terms of the fee agreements. The articles of incorporation of O'Bryan Law Center, P.C., were signed by petitioner as the incorporator on August 1, 1986. The articles of incorporation *646 were received by the Administrator of the Michigan Department of Commerce on August 13, 1986, and endorsed on August 15, 1986. On August 1, 1986, petitioner began a corporate medical plan for himself and employees of O'Bryan Law Center, P.C. On September 2, 1986, the first meeting of the incorporator and shareholder of O'Bryan Law Center, P.C., was held. At that meeting, O'Bryan Law Center, P.C., entered into an Assignment and Bill of Sale with petitioner for "all of his rights, title, and interest in" petitioner's personal property which was useful in carrying on the practice of law. The assignment provided it was effective as of August 1, 1986. Petitioner and O'Bryan Law Center, P.C., were both cash basis taxpayers during 1986. Petitioner omitted the legal fees in the amounts of $ 111,877.89 and $ 4,085.13, which he collected from Doster and Hall, from petitioners' 1986 joint Federal income tax return. Respondent determined that petitioner's share of the Norfolk draft and his share of the Mutual check were taxable income to petitioners. Petitioner asserts that the fees he earned as a sole proprietor can pass without recognizing income to his personal service corporation as *647 unrealized accounts receivable pursuant to section 351. Hempt Bros., Inc. v. United States, 490 F.2d 1172 (3d Cir. 1973), cert. denied 419 U.S. 826, 42 L. Ed. 2d 50, 95 S. Ct. 44 (1974); Kniffen v. Commissioner, 39 T.C. 553, 564-565 (1962). [2] Petitioner argues that O'Bryan Law Center, P.C., began its existence as a de facto corporation on August 1, 1986, and a valid assignment of uncollected legal fees became effective as of that date. Respondent argues that the fees are not unrealized accounts receivable. Respondent contends that the Norfolk draft and the Mutual check were received by petitioner prior to the formation of O'Bryan Law Center, P.C., and therefore the rule in Hempt Bros., Inc. v. United States, supra, *648 is not applicable since no accounts receivable existed to be transferred in a section 351 exchange. Accordingly, respondent asserts that the legal fees received by petitioner prior to incorporation are taxable to petitioner, not the corporation. In the alternative, respondent argues that the assignment of the legal fees is a prohibited assignment of income to a controlled corporation not yet in existence. The assignment of income doctrine is predicated on the well-established principle that income be taxed to the party that earned it. Helvering v. Horst, 311 U.S. 112, 85 L. Ed. 75, 61 S. Ct. 144 (1940); Lucas v. Earl, 281 U.S. 111, 74 L. Ed. 731, 50 S. Ct. 241 (1930). To determine whether the legal fees were received prior to incorporation, and therefore ceased to be unrealized accounts receivable, we must ascertain the date that O'Bryan Law Center, P.C., commenced its existence as a taxable entity. Whether an organization is to be taxed as a corporation under the Internal Revenue Code is determined by Federal, and not State law. Burk-Waggoner Oil Assn. v. Hopkins, 269 U.S. 110, 70 L. Ed. 183, 46 S. Ct. 48 (1925). Although local law does not control the classification of an organization for Federal tax *649 purposes, it does govern the determination of whether the legal relationships that have been established on formation of the organization are such that the Federal standards are met. Sec. 301.7701-1(c), Proc. & Admin. Regs. Accordingly, we will examine the status of O'Bryan Law Center, P.C., under local law. See Skarda v. Commissioner, 27 T.C. 137 (1956), affd. 250 F.2d 429 (10th Cir. 1957); Evans v. Commissioner, T.C. Memo 1974-267; O'Neill v. Commissioner, T.C. Memo 1957-193. A corporation may be classified as a de jure corporation or a de facto corporation. A corporation de jure is one created in strict or substantial conformity to the governing corporation statutes, and whose right to exist and act as such cannot be successfully attacked in a direct proceeding for that purpose by the State. A de facto corporation may be defined as one so defectively created as not to be a de jure corporation, but nevertheless the result of a bona fide attempt to incorporate under existing statutory authority, coupled with the exercise of corporate powers, and recognized by the courts as such upon the ground of *650 public policy in all proceedings except a direct attack by the State questioning its corporate existence. Fletcher Cyclopedia of the Law of Private Corporations, sec. 3761 (perm. ed. rev. 1982). The mere signing of the articles of incorporation is insufficient to create a de facto corporation. Allen Steel Supply Co. v. Bradley, 89 Idaho 29, 402 P.2d 394 (1965); Harris v. Ashdown Potato Curing Assn., 171 Ark. 399, 284 S.W. 755 (1926). If a corporation is a corporation de jure, it cannot, at the same time, be a de facto corporation. Boca & L.Ry. Co. v. Sierra Valleys Ry. Co., 2 Cal. App. 546, 84 P. 298 (1905). Moreover, if there is strict or substantial compliance with the statutes relating to creation of corporations, there is a de jure and not a de facto corporation. Fletcher Cyclopedia of the Law of Private Corporations, sec. 3761 (perm. ed. rev. 1982). Under section 56 of the Model Business Corporation Act, de jure incorporation is complete upon the issuance of the certificate of incorporation, and the possibility that a de facto corporation could exist is remote. However, some *651 States, including Michigan, continue to recognize the possibility of a corporation de facto. Bergy Bros., Inc. v. Zeeland Feeder Pig, Inc., 96 Mich. App. 111, 292 N.W.2d 493 (1980). Once a taxpayer has complied with State laws governing the creation of a corporation, a separate entity comes into being, be it de jure or de facto, which will not be ignored for Federal tax purposes so long as its creation is followed by business activity other than tax avoidance. Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 87 L. Ed. 1499, 63 S. Ct. 1132 (1943). Section 21.200(221) of Michigan's Business Corporation Act, [3] which does not follow Model Business Corporation Act section 56, provides that: The corporate existence shall begin on the effective date of the articles of incorporation as provided in section 131. Filing is conclusive evidence that all conditions precedent required to be performed under this act have been fulfilled and that the corporation has been organized under this act, * * *.
*652 Section 21.200(131)(2) of that Act specifies that articles of incorporation are generally effective at the time they are indorsed. O'Bryan Law Center, P.C., was created in strict compliance with the conditions precedent to the creation of a corporation under Michigan law when the articles of incorporation were filed and indorsed on August 15, 1986. If the conditions precedent to the creation of a corporate body have been complied with under State law, the corporate entity generally will be recognized for Federal tax purposes. Skarda v. Commissioner, supra at 144-145. Therefore, O'Bryan Law Center, P.C., came into existence as a de jure corporation on August 15, 1986. Because the legal fees in issue were received by petitioner prior to August 15, 1986, they did not constitute accounts receivable on the date of corporate formation; the fees had already been collected. Petitioner notes that the Assignment and Bill of Sale dated September 2, 1986, retroactively assigned the accounts receivable of petitioner to O'Bryan Law Center, P.C., effective August 1, 1986. Petitioner therefore contends that the legal fees were unrealized accounts receivable as of the *653 date of transfer to the corporation pursuant to the Assignment and Bill of Sale purportedly effective as of August 1, 1986. We find petitioner's position untenable and have found no legal authority for assigning income to a corporation not yet in existence. If such an assignment were permissible, a taxpayer under similar facts could attempt to retroactively assign all income previously received by the sole proprietorship beginning at January 1 of the taxable year. The facts indicate that the legal fees were received by the sole proprietorship prior to incorporation, and therefore are taxable to petitioner, and not the corporation. We therefore sustain respondent's determination that the legal fees are taxable income to petitioners. Because we have determined that O'Bryan Law Center, P.C., as a separate taxable entity, came into being on August 15, 1986, and that petitioner actually received the legal fees at issue on August 12, 1986, we need not consider respondent's argument as to a prohibited assignment of income. Nor need we consider petitioner's argument that, due to the claimed nonnegotiability of the Norfolk draft and ethical restrictions on his ability to recover his *654 fees from his client trust account, his control of the receipt of the income was subject to substantial limitations, and therefore, pursuant to section 1.451-1(a), Income Tax Regs., not constructively received by him when the Norfolk draft and Mutual check were received. In light of the foregoing, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. See Abdul Jalil al- Hakim v. Commissioner, T.C. Memo 1987-136; F.R. Johnson Products Co. v. Commissioner, T.C. Memo 1982-110; Briggs v. Commissioner, T.C. Memo 1956-86; Rev. Rul. 80-198, 1980-2 C.B. 113↩.
3. Mich. Comp. Laws sec. 450.1101↩ (Mich. Stat. Ann. sec. 21.200(101) (Callaghan 1983)).