[No. 2605.   Sept. 27, 1922.   Rehearing Denied Nov. 10, 1922.]

## MONTOYA v. HUBBELL et al.

### SYLLABUS BY THE COURT

(1) Where a person has acted as stockholder, director, and manager of a corporation for a long period of years, he is estopped, as against the corporation and its other officers and stockholders, to deny the regularity of the corporate organization.     P. 256

(2) Where a person has, however informally, assumed to place within the dominion and ownership of a corporation his rights in property, and has taken the corporate stock in payment therefor, he is estopped, as against the corporation, to dispute its title.     P. 257

(3) A corporation, which has left in the custody of its officer and agent its place of business and its property therein situated, may resume its possession without resort to legal remedies, and may discharge the officer and servant and retake the custody of its property.     P. 257

Appeal from District Court, Bernalillo County; Hickey, Judge.

Action by Nestor Montoya against Frank A Hubbell and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded, with directions.

See, also, 27 N. M. 273, 199 Pac. 1006.

Marron & Wood, of Albuquerque, for appellants.

H. B. Jamison, of Albuquerque, for appellee.

### OPINION OF THE COURT.

PARKER, J.   The original opinion handed down in this case proceeds upon the theory that there is no substantial evidence upon which to support the findings made by the trial court.   Upon further consideration of the case we have concluded that we were in error in the

disposition made of the case, for two reasons, viz.: (1) No such question was presented to the court below or in the briefs in this court; (2) the holding, under all the facts shown in the record, cannot be sustained unless we abandon a thoroughly established doctrine to the effect that the findings of the trial court will not be disturbed if they are supported by any substantial evidence. There was substantial evidence to support the findings of the court below in the form of direct testimony of the appellee, together with the books, papers, and exhibits. We proceeded upon the theory that by reason of the previous conduct of the appellee his credibility as a witness to the facts testified to by him at the trial had become so impaired that his evidence should not be considered substantial. In so holding we overlooked the controlling consideration that when a trial judge or a jury has the opportunity to see and observe the demeanor, the apparent carefulness and fairness on the stand, of the witnesses, the court or the jury trying the issues of fact are in a much better position to determine where the truth in the matter lies than an appellate court which examines the case upon a printed record alone. Our rule so firmly established, is a wise and salutary one. It is not within the power of an appellate court to decide questions of fact upon a paper record with the same fairness and certainty as the trial court can under the circumstances mentioned. The determination of the issues of fact rightfully belongs to the trial court, and it is a usurpation of power for this court to attempt to override the findings of the trial court when it can be seen from the transcript there was evidence before him which, if believed by him, would support the findings. The original opinion, therefore, will be withdrawn.

There is, however, in this case a proposition presented which is entirely adequate to dispose of the same, and it is the proposition which was presented to the court in the original briefs. The proposition is that the appellee is estopped to take the position which he now takes in this caase by reason of previous conduct.

Without descending into much detail as to the facts, it may be briefly stated that some 30 Republicans in the year 1901, desiring to publish a Spanish newspaper advocating the principles of their party, contributed divers sums of money ranging from $25 to $100 each, for the purpose of purchasing and publishing such a paper; that some $1,700 was thus contributed; that an association of these individuals was formed, and one Alejandro Sandoval was elected president thereof, Frank A. Hubbell, treasurer, and the appellee, secretary; that a small plant then used in running a paper was purchased, and the parties went into charge of the same, the finances and business management thereof being turned over to Mr. Hubbell and the editing and running of the paper to Mr. Montoya; that this state of affairs continued until 1907; that for a time both Hubbell and Montoya drew salaries, but later the paper did not earn enough to pay both of them, and Mr. Hubbell thereupon ceased to be paid any salary; that during the year 1907 a corporation was formed for the purpose of acquiring and taking over as a going concern said business and all of the assets and liabilities thereof, the said paper and business being known as La Bandera Americana; the articles of incorporation were executed by Mr. Hubbell, Mr. Montoya and one Chaves; the articles of incorporation were published in the La Bandera Americana, under the direction of Mr. Montoya who was acting as secretary and manager of the corporation; that thereafter the corporation assumed to own and operate the property, publish the paper, and to do a general printing and publishing business; that Montoya assumed to act as director, secretary, and manager, Hubbell as director, president, and treasurer, and Chaves as the third director, which state of affairs continued until the death of Chaves, after which time James L. Hubbell assumed to act as director in place of Chaves deceased; certificates of stock were issued to Montoya, Hubbell, and Chaves, and to the original associates (the latter remaining undelivered in the stock book), all signed by Hubbell as president

and Montoya as secretary; the funds of the corporation were deposited in the corporate name and checked out in the name of La Bandera American, Frank A. Hubbell, by Nestor Montoya, manager; annual reports to the State Corporation Commission were made, signed by Montoya, sowing that Montoya was the statutory agent of the corporation, showing the amount of the corporate stock, that Hubbell was its president and treasurer, that Montoya was its secretary and manager, and that both, together with James L. Hubbell, were its directors; Montoya made reports to the Post Office Department of the federal government showing the ownership of the stock of the corporation, as required by the federal statute; he purchased, as manager, a printing press, executed a chattel mortgage to the vendor for the purchase price, which mortgage was signed, "La Bandera Americana Publishing Company, by Nestor Montoya, Manager;" he made returns for taxation to the countoy assessor of the property as the property of the corporation; he filed an answer in a suit for taxes levied under said assessments, which answer was under oath, and in which he states that he is the secretary and manager of the corporation; he made income tax returns for the corporation and paid the tax out of funds deposited as heretofore pointed out; he paid rent in the same way for the premises occupied by the corporation and which were rented by Hubbell for the corporation. At the close of the evidence the court announced his conclusion as follows:

"In this case, as in so many, the evidence of the main witnesses directly contradict each other; but for the purpose of deciding the case the court does not, as it conceives the situation, have to pass on the question as to which man was telling the truth in the case—or which men were telling the truth.

"The court finds that the bill of sale was not regular, and did not convey title from the association to the corporation. The court finds that the corporation, La Bandera Americana, had a charter issued, but that the organization was never made a functioning organization under the laws of the state; finds further that as a matter of law, James L. Hubbell was not a director; that Frank A. Hubbell had not the power in

himself as president to employ an attorney to represent La Bandera Americana, the corporation. Therefore the motion to strike the petition in intervention of La Bandera Americana, the corporation, is sustained.

"The numerous questions as to evidence admitted subject to the objection and the objections that were raised by the plaintiff are sustained, and the numerous objections made by the defendant that were taken subject to the objection, allowed subject to the objection, are overruled."

On the following day the court made extensive findings of fact following along the line of his announced decision but going somewhat farther than therein indicated. It is apparent from the decision of the court and the findings that the decision was based upon the fact that there was no valid bill of sale executed from the original association of individuals to the corporation, and that therefore the title to the property did not pass to the corporation. The court was also of the opinion that, although the corporation had filed articles of incorporation, it had never been organized legally so that it could function as a corporation, and he therefore found that none of the parties had become officers of such corporation. As a consequence thereof he decided that Hubbell, not being legally the president of the corporation, had no power to employ an attorney to represent the corporation, and he therefore struck the petition of intervention of the corporation from the files and dismissed the same. He thereupon ordered a perpetual injunction against the two Hubbells from interfering in any way with the possession and control of the property involved.

Upon the trial Montoya had testified that the original property of the association purchased with the money subscribed was put into his sole charge, and that it had never been transferred to the corporation. Hubbell had testified that a bill of sale had been executed conveying the property to the corporation, and that the same was left in the possession of Montoya as secretary. Upon this point the court evidently believed that Hubbell, even if the bill of sale was in fact executed, was without authority from the owners and conveyed no title. It nevertheless remains true that both Hubbell and Mon-

toya turned over to the corporation all of the rights which they had in the property, and that so far as they were concerned the corporation should own and manage the same. So far as the rights of other persons in the property were concerned, neither Hubbell nor Montoya had any authority to assert their rights or interest therein. They both became bound by their conduct to recognize the corporation as the owner and to serve it in the capacities of officers and trustees, and not to set up adverse personal interests therein. Montoya's position in fact seems to be that the property of the original association was turned over to him to use, and that it had been worn out and been replaced almost in toto by new materials purchased by him out of the earnings of the paper and with moneys which he had acquired from other sources. He therefore claims the right to the possession of the property, but does not distinctly claim to have title to it. In so far as concerns the materials purchased out of the earnings of the paper, Montoya, under his own testimony, could hardly claim title thereto. It was a part of the expenses of the business to keep the plant up to an efficient standard. The amount contributed out of his own private resources is alleged to be about $500, but this fact alone would not pass title to Montoya. Hubbell received 5,100 shares of the capital stock of the corporation, and Montoya received 2,500 shares, for whatever interests they had in this plant, and the corporation thereupon, so far as they were concerned, became the owner. Whether they successfully transferred the interest of the other original subscribers, as they evidently intended to do, is not here for consideration, as none of those parties are here complaining.

In regard to the organization of the corporation by election of officers the testimony of the parties is in direct conflict; Hubbell testifying that proper meetings were held and officers elected, and Montoya testifying that no meetings were ever called or held, and that he and Hubbell just assumed the offices without meetings or elections. Just so about the election of James L. Hubbell as a director.

Assuming the facts to be as testified to by Montoya, is he in a position to deny the proper organization of the corporation. We think not, and we think that he is clearly estopped to deny the regularity of the organization. For a long period of years he actually participated as an officer and director in the management of the affairs of the corporation, and assumed that the organization was regular. All of the corporate acts during these years have been assumed and asserted by him to be legal and regular. To allow him now to dispute the fact to the detriment of the corporation would be unconscionable, and is not permitted by law. He is estopped by his own conduct to so assert the facts.

[1] Counsel cites several of our cases as authority that there is no estoppel under the facts. Chambers v. Bessent, 17 N. M. 487, 134 Pac. 237; Algodones Land & Town Co. v. Frank, 21 N. M. 82, 153 Pac. 1032; Dye v. Crary, 13 N. M. 439, 85 Pac. 1038, 9 L. R. A. (N. S.) 1136; Ilfeld v. Stover, 4 N. M. (Gild.) 1, 12 Pac. 714. These cases are in accord with the general doctrine that estoppel in pais, or equitable estoppel, is to be applied only in the interest of justice, or when it will be inquitable not to apply it. It is also pointed out that where the parties have knowledge of the facts there can be no equitable estoppel. See along this same line 14 C. J. "Corporations," § 267.

But in this case there is no evidence that the corporation or Hubbell ever had knowledge or means of knowledge of the fact that Montoya was not turning over to the corporation all of his interest in the property, or that he still claimed to own and control it as his own. There is no evidence that the corporation or Hubbell had knowledge or means of knowledge, that Montoya was relying upon the faulty organization of the corporation to defeat his transfer to it and the issue of its stock to him in payment therefor. There is no evidence that the corporation or Hubbell had knowledge or means of knowledge that when Montoya assumed to act as a stockholder, di-

rector, and manager of the corporation he was not doing so in good faith for the benefit of the corporation. To allow Montoya to now assert that he never transferred to the corporation his interest in the property would result in injustice to the corporation, because it has paid for the property by the issuance of its stock for the same. It would be an injustice to Hubbell because he parted with his interest in the concern and took stock in payment upon the theory that the corporation became the owner of both his and Montoya's interest therein, if not also that of the other members of the original association. It seems plain, therefore, that this is a case for the proper application of the doctrine of estoppel. See, generally, as to estoppel of officers of corporations to deny its corporate existence, 14 C. J. "Corporations," § 263; 1 Fletcher Cyc. Corp. § 350; Geneva Min. Springs Co. v. Coursey, 45 App. Div. 268, 61 N. Y. Supp. 98; Coldwater Copper Mining Co. v. Gillis, 170 Mich. 126, 135 N. W. 901, Ann. Cas. 1915A, 410.

[2] We have then a case where Montoya and Hubbell have, however informally, placed in the power and under the dominion and ownership of the corporation all of their rights in the property involved and all of the rights of the original members of the association, so far as they had power to do so; they have assumed to organize the corporation and to elect themselves officers of the same, together with one other director; they have, as such directors and officers for a long period of years, conducted the affairs of the corporation as a regularly organized and functioning corporation. Under such circumstances it seems clear that Montoya is in no position to deny the rights of the corporation to the possession and control of the property and entry into the premises involved.

[3] A proposition is presented by counsel for appellee to the effect that, assuming that the corporation was the owner of the property and was lessee, and as such entitled to the possession of the premises where the paper and business was conducted, it must proceed legally, rather than by entry to obtain possession. In

other words, can a corporation, which has in the custody of its officer and agent its leased premises and its property therein, retake said premises and property from said officer and agent, by entry into the premises and by taking manual possession of the personal property, or must it proceed by legal process in some form to accomplish the result? Counsel for appellee urges that resort must be had to forcible entry and detainer to obtain possession of the premises. In this connection a distinction is to be noted between a case of this kind and the ordinary case where possession of real estate is sought to be obtained. In the ordinary case of landlord and tenant, for instance, the tenant is in exclusive possession and the landlord is entirely out of possession. In such case, necessarily, the landlord must resort to some possessory action, forcible entry and detainer, or ejectment. But in cases like the present, where the corporation is the lessee, and the officer and agent is merely the occupant for the corporation, the possession is the possession of the corporation. It is already in possession, and the question between it and its agent and servant is whether it, through its proper officers, may enter and discharge its servant and agent, and, if necessary, expel him from the premises. In such case there can be no doubt of the right of the corporation so to do. It has never parted with its right to possession, nor its actual legal possession, and an agent and servant who resists the entry has no more rights than a stranger and mere intruder. It is true that section 2384, Code 1915, provides a remedy for cases like the present. But the remedy is not exclusive, although, possibly, most persons would resort to it rather than undertake a proceeding which might result in personal difficulty. But we know of no law which will prevent an owner, who has left in the custody of his place of business an agent and servant, which agent and servant violates his trusteeship and sets up the right in himself, from entering the premises with or without force, discharging the servant and expelling him from the premises. Just so with the books, records, and per-

sonal property of the corporation. It might take them from the servant by force if necessary.

It is suggested by counsel for appellee that the court found that Montoya had for many years been in possession under a claim of right. This claim of right, so far as we can ascertain from the record, was never disclosed to any one, and was a mere secret determination on the part of Montoya to hold and claim the property as his own. This determination never appeared until the controversy arose between the parties out of which this suit resulted.

It follows from all of the foregoing that the judgment of the district court is erroneous, and should be reversed and the cause remanded, with directions to dissolve the injunction and dismiss the complaint; and it is so ordered.

RAYNOLDS, C. J., concurs.

BARNES, J., did not participate.