HALL *v.* ROBINS.

4-8391          207 S. W. 2d 746

Opinion delivered February 2, 1948.

*Northcutt & Northcutt* and *Oscar E. Ellis,* for ap-‧
pellant.

*Shelby C. Ferguson* and *Sidney Kelley,* for appellee.

GRIFFIN SMITH, Chief Justice. In a joint complaint by Alma Robins and Stella Haley, each alleged ownership of separate tracts of land traceable to a common source. The action was in unlawful detainer with D. R. Hall and his wife as defendants. The Court apparently treated the proceeding as ejectment, although the instructions deal with unlawful detainer. There was no error in this respect.

The north half of the northwest quarter of the northeast quarter of section fifteen, township eighteen north, range six west, (Sharp County) was formerly owned by Jesse Ritchie, who died in 1926. His wife died within three weeks of the date mentioned.

October 11, 1924, Alma Robins, a daughter of the Ritchies, executed to Dee Phillips a deed conveying an area described by metes and bounds, beginning at a point on the line between sections ten and fifteen where the Evening Shade-Ash Flat highway crosses the line. The beginning would be slightly west of the northeast corner of the twenty acres originally owned by Ritchie. The undisputed proof, concurred in by Phillips, is that in

measuring the land intended to be described in the deed, a "half chain" was utilized, with the result that instead of setting out an area 105 by 429 feet, the strip measured 204½ feet north and south and 864 feet east and west. Phillips immediately went into possession of the land he intended to buy, (about one-fourth of that described) fenced it and erected buildings. October 12, 1944, Phillips, using the erroneous description, conveyed to Whited, and in 1945 Whited sold to Hall, who claims to have innocently purchased for value without notice.

February 17, 1941, Alma Robins,[1] by warranty deed, sold to Stella Haley a part of the primary twenty-acre tract. The survey starts at the northwest corner of the north half of the northwest quarter of the northeast quarter and runs east 549 feet, thence south 105 feet to a stream, then southwesterly 670 feet, thence northwesterly 527 feet to the point of beginning. Result is that the 549-ft. east line traverses the west line of the 864 feet conveyed, *prima facie,* to Phillips. When remainder of the description included in the Haley deed is considered, it is found that a small area covered by the Robins deed to Phillips is embraced within the Robins-Haley conveyance.

Phillips is now a resident of Oklahoma. His testimony was taken by interrogatories. When the questions were submitted to counsel for appellants, they were objected to on the ground that answers would be incompetent. For this reason the evidence has been but sketchily abstracted. We agree with appellees that if purpose of the testimony was to contradict unambiguous recitals in the deed, it would be subject to the objection urged. However, in view of appellees' pleas of adverse possession, circumstances attending the transactions and their inception—such, for instance, as conduct of Phillips in fencing to strict boundaries, and Alma Robins' acts showing intent to claim beyond these lines—would be competent on the point of hostility, but incompetent to bind a purchaser claiming under the deed, such as appellants.

[1] This deed was executed by R. A. and Alma Robins, husband and wife. Other heirs of Jesse Ritchie appear to have treated their sister Alma as having the right to sell the inherited lands. The explanation is that there were oral gifts. Title in this respect is not an issue.

The deed, of course, lost its value if appellees' title ripened by adverse possession, hence testimony relating to conduct is not in contradiction of the deed, but is to show that in spite of the paper conveyance appellees are owners. Evidence of a somewhat similar character featured in *Martin* v. *Winston*, 209 Ark. 464, 190 S. W. 2d 962 when W. A. Jackson testified.

In the case at bar Phillips, (who is related to D. R. Hall) was asked: "Did you enclose with a fence all the land, or approximately all, that you purchased from Robins, [and did this occur] soon after this trade was made?" The witness answered: "Part was fenced soon after purchase; the balance later. . . . In the yard and garden I fenced all the land I claimed. . . . I helped measure the land [at the time of purchase] with a surveyor's half-chain, . . . [and] the size of the lot purchased was 105 x 429 feet. . . . At no time after fencing the property did I claim more land than that enclosed, [and] it was fenced a short time after I bought. In selling I thought I conveyed the exact lot purchased from Robins, and no more."

R. A. Robins, who with his wife had lived in Oklahoma four years at the time of trial—(he is a minister 70 years of age)—testified that after the Phillips deed was executed a dilapidated barn standing on the property outside the 105 x 429-ft. area was torn down and rebuilt, mutual beliefs at that time being that the barn was on Ritchie lands.

This property, with the new building, was claimed by Hall after he bought from Whited in 1945. Lands contiguous but outside the boundaries as conceived by grantor and grantee in 1924 had been rented for pasturage by the Ritchies or those claiming through them.

Answering the question, "Had the Ritchie estate and Mrs. Robins claimed to own the land south of this original lot all these years, and [did they have it] fenced as pasture?", a witness replied, "Yes, had it rented out as pasture, kept a fence around it, looked after it, and paid taxes on it." Summing up his testimony, R. A. Robins said: .

"No one [except the Ritchie heirs] has claimed to own more [than the land fenced by Phillips until Hall came along]. It was understood that the garage was on the south side of the land—on the line, or maybe a foot or eighteen inches from it; and that fence was on the line. . . . All these years, before Hall bought, the fence was around the Ritchie land. It went up and joined the yard fence: the cross-fence was partnership, and it is still there unless Hall has moved it. . . . The north side was fenced when we sold it [to Phillips]; Armstrong built the cobblestone fence on the front and wire fence on the south."

A deed to lands forfeited to the State for 1934 taxes, showing purchase by Mrs. R. A. Robins, and a Clerk's redemption certificate issued to R. A. Robins covering 1937 forfeiture; also a State deed to Mrs. Robins evidencing sale under classification provided for by Act 331 of 1939, were offered as evidence of ownership, but were excluded because the land described was "Pt. NE¼ NW¼, Sec. 15, Twp. 18N, R. 6W." The ruling was correct as applied to the evidence.

Appellants think they should prevail under the general rule that where a grantor remains in apparent possession of the demised property his rights are those of a trustee, or at most he holds in subordination to the grant, hence adverse possession can have no foundation because of such occupancy. *Forrest* v. *Forrest,* 208 Ark. 48, 184 S. W. 2d 902, is cited. The quotation is from Corpus Juris Secundum, v. 2, p. 656, and the statement is that there is merely a presumption. In the instant appeal we think there was a question for the jury under testimony where the presumption yielded to facts. The controversy was submitted under instructions free of error.

The defendants, before answering, moved to dismiss for misjoinder of parties. It is insisted that because Alma Robins does not claim to own any of the land Stella Haley describes in her complaint, and because Stella Haley is not interested in the property Alma Robins contends for, the misjoinder is fatal. Appellees proceeded under authority of Act 334, approved March 26, 1941.

Section one provides that all persons may join in an action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. A plaintiff need not be interested in obtaining all the relief demanded, and judgment may be given for one or more of the plaintiffs "according to their respective rights." See *Ripley, Ex-Parte,* 209 Ark. 701, 192 S. W. 2d 127. While facts in the Ripley case are not the same as those pertaining to the instant appeal, the decision discloses the legislative purpose to liberalize a procedure, to the end that rights or liabilities incidental to or growing out of common or related transactions may be adjudicated in a single suit. Under the Act this may be done if an adverse party is not deprived of a substantial right.

Affirmed.