The Exchange Bank & Trust *v.* Gibbons.

5-1407                    307 S. W. 2d 877

Opinion delivered December 23, 1957.

*J. G. Ragsdale* and *B. L. Allen,* for appellant.

*Melvin E. Mayfield* and *Surrey E. Gilliam,* for appellee.

George Rose Smith, J.   The only question presented by this appeal is that of priority between a mortgage executed by J. M. Gibbons to the appellee McHenry and a later mortgage executed by Gibbons to the appellant bank.   The chancellor held that the earlier mortgage had not lost its original priority.   The decree awarded McHenry a first lien on the land and directed the foreclosure of both mortgages.

On March 25, 1947, Gibbons and his wife executed a mortgage to McHenry to secure three notes totaling $1,180, the last note being due March 17, 1950.   No payments on this debt were ever made by Gibbons, but the

due date of the indebtedness was extended by the execution of renewal notes in 1950 and 1954. McHenry failed to make an endorsement of the extensions upon the margin of the record, as required by Ark. Stats. 1947, § 51-1010; so, according to the record, the mortgage was barred by limitations on March 17, 1955.

On February 16, 1955—twenty-nine days before the McHenry lien was ostensibly barred—Gibbons and his wife executed to the bank what was in form a first mortgage on the land in dispute, securing a note for a pre-existing debt of $2,250. This mortgage was filed for record the next day. The present suit was brought by McHenry in March of 1956, the bank being joined as a defendant. Although the debtors made no defense to the claim of either mortgagee, Mrs. Gibbons was called as a witness by McHenry and testified that when the mortgage to the bank was signed her husband told the president of the bank, Lewis Hurley, that he was taking a second mortgage and that McHenry held the first mortgage.

On these facts alone the case is clearly governed by the holding in *Clark* v. *Shockley,* 205 Ark. 507, 169 S. W. 2d 635. There the first mortgage was not yet barred of record when the subsequent mortgage was executed, and the junior mortgagee had actual knowledge of the existing incumbrance. Payments on the prior mortgage were made by the debtors, but the holder of the mortgage failed to make the required notation on the margin of the record. On the authority of several earlier decisions we held that, despite the junior mortgagee's knowledge of the outstanding lien, the first mortgage lost its original priority when the mortgagee permitted it to become ostensibly barred of record.

Counsel for McHenry frankly concede that the *Clark* case would end the matter if the facts were limited to those already stated, but they insist that other proof distinguishes this case from that one. This proof, in addition to Mrs. Gibbons's version of the actual transaction with Hurley, comprises the testimony of two other witnesses. C. L. Greene, an accountant and lawyer, had been employed by a third person in connection

with Gibbons's affairs. In a discussion with Hurley this witness was told that when Hurley accepted the mortgage to the bank he understood that it was a second mortgage. As Green had no contractual relation with any party to the litigation this testimony merely shows knowledge on the part of Hurley, which, under the *Clark* case, is immaterial.

McHenry testified that, upon being told by Gibbons that a mortgage had been given to the bank with the understanding that it was a second mortgage, he had a conversation with Hurley, who verified Gibbons's statement. ''I asked him [Hurley] whether or not Gibbons told him that he was taking a second mortgage, that I already had a mortgage on the property, and he said yes he knew that, Gibbons told him.'' It is not shown whether this conversation took place within the twenty-nine days that remained before the first mortgage was apparently barred or during the eleven months that thereafter elapsed before this suit was filed.

This testimony does not support the various arguments that are advanced for affirmance of the decree. It certainly does not show that the bank bound itself by contract to subordinate its mortgage to the McHenry lien. The bank's mortgage did not by its terms recognize the prior lien, as was the case in *McFaddin* v. *Bell,* 168 Ark. 826, 272 S. W. 62, nor was there an explicit oral agreement in advance between the lienors, as in *Merchants' & Planters' Bank* v. *Citizens' Bank of Grady,* 175 Ark. 417, 299 S. W. 753. The most that can fairly be said from the testimony is that Gibbons, in giving the mortgage to the bank, voluntarily and candidly told Hurley that there was an existing lien in favor of McHenry, and Hurley was nevertheless willing to accept the proposed security. Even if Gibbons's oral statement to Hurley could be regarded as contractual in nature, it would of course have been merged in the written contract.

It is equally plain that the essential elements of an equitable estoppel are wanting. Such an estoppel requires that the innocent person be misled to his detri-

ment, so that it would be inequitable to permit the person estopped to change his original position. Pomeroy begins his familiar enumeration of the requisites of estoppel, with this statement: "There must be conduct — acts, language, or silence — amounting to a representation or a concealment of material facts." Pomeroy, Equity Jurisprudence (5th Ed.), § 805. Later, in § 813, the further statement is made: "The estoppel is commensurate with the thing represented, and operates to put the party entitled to its benefit in the same position as if the thing represented were true."

Here the vital requirement of a misrepresentation is wholly lacking. It was McHenry who went to Hurley for the purpose of confirming Gibbons's statement in the matter; Hurley did not take the initiative in an attempt to lull McHenry into a feeling of security. McHenry asked Hurley whether Gibbons had told him that he was taking a second mortgage. Hurley, who appears to have acted with candor throughout, truthfully answered that Gibbons had so informed him. It is plainly impossible for an estoppel to be based upon a statement that was true when made and that the maker still asserts to be true. That the McHenry mortgage has now lost its priority is not due to any misrepresentation on the part of the bank; it is simply the result of McHenry's carelessness or ignorance of the law, which led him to allow his mortgage to become barred as to third persons.

It is also suggested that the bank was somehow guilty of fraud in failing to prepare for the Gibbonses' signature a mortgage expressly reciting the priority of the McHenry lien. On this point it seems sufficient to say that the debtors seem to have signed the mortgage, as prepared, without objection, that they make no assertion of having been deceived, and that McHenry is not entitled to complain of a supposed fraud in a transaction to which he was not a party.

Reversed.

McFADDIN, J., dissents.