A. F. HOUSE, Trustee *v.* James R. LONG et al

5-4258                                          426 S. W. 2d 814

Opinion delivered April 22, 1968

*Wright, Lindsey & Jennings,* for appellant.

*Robinson, Thornton, McCloy & Young,* for appellee and cross-appellant, Arkansas Louisiana Gas Co.

*Catlett & Henderson,* for appellee, Monarch Mill & Lumber Co.

W. B. PUTMAN, Special Justice. This litigation involves the priority of liens among a purchase-money mortgage, a construction money mortgage, various mechanics' and materialmen's liens and a security agreement involving certain fixtures in thirteen different dwellings.

The defendant Long, a builder, had arranged for financing with Modern American Mortgage Company for approximately forty residences to be constructed primarily in Beverly Hills Addition to the City of Little Rock, Arkansas. On each lot purchased by Long, purchase-money mortgages were given in amounts varying from $2,750.00 to $3,200.00, and in addition, separate construction money mortgages in the amount of $10,-000.00 were given on each lot. Both the purchase and construction money mortgages and the notes which they secured were subsequently assigned in trust to the appellant, A. F. House. Construction was not begun until these mortgages were placed of record.

On ten of the thirteen residences in question, arrangements were made to disburse the proceeds of the construction money loans through Beach Abstract and Guaranty Company. Disbursements on the other three were through Standard Title Company. The procedure established required Long to submit to the disbursing agent each week a list of the laborers, mechanics and

materialmen who were entitled to payment and the amounts thereof on each house. An officer of Modern American would then inspect the premises to determine whether construction had progressed sufficiently to justify the requested disbursement. If so, funds would be sent to the disbursing agent, and Long would execute a separate note for each disbursement. Individual checks would be issued to each laborer, mechanic or materialman in the amount shown on the list and delivered to them by Long.

Cross-appellant, Arkansas Louisiana Gas Company, had entered into a separate contract with Long to sell a heating and air-conditioning unit, a cooling tower, a kitchen range and oven and to install the duct work in each house. A blanket security agreement was executed on November 30, 1964, but was never recorded. Security agreements on individual lots were also executed as the goods were delivered, but these also were not recorded. It was not until December 27, 1965, approximately two months after construction had ceased and Long's insolvency was generally known, that additional security agreements were executed and recorded.

The chancellor held that the language of the construction money mortgages did not unqualifiedly commit the mortgagee to make the advances so as to afford it priority over the mechanics' and materialmen's liens. He further held that the transaction between Arkansas Louisiana Gas Company and Long created a purchase-money security interest in collateral other than inventory which was not perfected within ten days after the debtor received possession as required by Ark. Stats. 85-9-312 (4) (Repl. 1961) in order to give it priority over conflicting security interests.

Accordingly, the chancellor established the priorities in the following order: (1) Purchase-money mortgage; (2) mechanics' and materialmen's liens; (3) construction money mortgage; (4) the security interest of

Arkansas Louisiana Gas Company. From this decree, A. F. House, Trustee, and Arkansas Louisiana Gas Company have appealed.

The pertinent language in each of the thirteen construction money mortgages in question is as follows:

"Grantee agrees that the acceptance and recordation of this mortgage binds grantee, its successors and assigns absolutely and unconditionally to make said loans and advances. Such advances will be made as requested by grantor as such work progresses."

It was the view of the trial court that this language was insufficient under our decisions requiring such a recitation to leave the mortgagee no option in the matter of making advances. See *Lyman Lamb Co. v. Union Bank of Benton*, 237 Ark. 629, 374 S. W. 2d 820, and that the conduct of the parties left it to the discretion of the lender whether to make such advances. We are unable to agree with this conclusion.

The provision plainly recites that upon acceptance and recordation of the mortgage, the grantee (mortgagee) is "absolutely" and "unconditionally" bound to make the advances. Had the recitation stopped at the end of the first sentence, we presume there would have been no quarrel with it. If, therefore, there is any deficiency in the provision, it must be created by the last sentence which provides that "such advances will be made as requested by the grantor as such work progresses." We do not believe that this language grants the mortgagee any option in the matter. On the contrary, whatever options there are rest with the mortgagor. If he causes the work to progress and requests the advances, the mortgagee has no choice other than to make them.

There is no necessary vice in a disbursement procedure keyed to the progress of construction. In *Ash-*

*down Hardware Co.* v. *Hughes,* 223 Ark. 541, 267 S. W. 2d 294, the construction money mortgage provided for advances to be made upon completion of each of a series of tourist cabins. The unconditional nature of the commitment was sustained when attacked by a materialmen's lien holder seeking priority.

The precise language in question here was approved in *Planters Lumber Co.* v. *Wilson,* 241 Ark. 1005, 413 S. W. 2d 55, a case decided after the entry of the decree from which this appeal was taken. Although in that case the principal question was the priority of a construction money mortgage to the extent that funds secured by it were withheld as payment for the lot and for interest, this Court stated that the language of the mortgage absolutely and unconditionally bound the mortgagee to make advances as the work progressed.

We hold that the language in the construction money mortgages unconditionally required Modern American to make advances to Long and that they should take priority over the mechanics' and materialmen's liens.

Arkansas Louisiana Gas Company has filed a cross-appeal asserting that the chancellor did not accord it the priority to which it is entitled. We believe this point is well taken. The trial court held that Ark. Stats. 85-9-312 (Repl. 1961), dealing with priorities among conflicting security interests in the same collateral, was determinative of the rights of Arkansas Louisiana Gas Company. It was, however, stipulated that the kitchen range and oven were fixtures, and the chancellor held that the heating-air-conditioning units and cooling towers became fixtures when installed. We are of the opinion that under these circumstances, the applicable statute is 85-9-313 which is the provision of the Uniform Commercial Code designed to establish priority of security interests in fixtures. The appropriate provisions of that statute are as follows:

"(2) A security interest which attaches to goods before they become fixtures takes priority as to the goods over the claims of all persons who have an interest in the real estate except as stated in subsection (4).

"(4) The security interests described in subsections (2) and (3) do not take priority over

"(c) a creditor with a prior encumbrance of record on the real estate to the extent that he made subsequent advances if . . . the subsequent advance under the prior encumbrance is made or contracted for without knowledge of the security interest and before it is perfected."

Under this statute if Arkansas Louisiana's security interest in the goods, although not yet perfected, *attached* to the goods before they became fixtures, it would take priority, as to the goods only, over the prior recorded mortgages to the extent that advances were made under these mortgages before the goods were affixed to the realty.

Ark. Stat. 85-9-204 (1) provides that a security interest attaches when there is an agreement that it attach and value is given and the debtor has rights in the collateral. The chancellor found that as between Arkansas Louisiana and Long, the security interest attached before the goods became fixtures.

All of the purchase money had been advanced before the goods became fixtures, and it is apparent from the record that some construction funds were advanced before and some were advanced afterward. In order to establish the extent to which Arkansas Louisiana is entitled to priority as to its goods which became fixtures, it will be necessary to determine in each case how much money had been advanced under the construction money mortgages before the goods became fixtures and how much was advanced thereafter.

It is likewise our holding that the materialmen's liens will take priority over Arkansas Louisiana's attached but unperfected security interest in the goods only to the extent that labor or material was supplied after the goods became fixtures.

It is argued that this permits a "secret lien" and results in inequities to the other lien holders. The answer to this is that there is no inequity in prohibiting a secured creditor from looking to security other than that upon which he relied when he decided to advance the money. Arkansas Louisiana's priority of security interests affects only the goods which became fixtures and not the remaining realty and improvements. Ark. Stat. 85-9-313 (5) provides for the removal of the fixtures from the real estate in circumstances of this kind upon the posting of adequate security for the payment of damages resulting from the removal.

Appellant House argues, however, first: That Arkansas Louisiana's security interest attached at the time of the execution of the blanket security agreement on November 30, 1964, and that all the mortgage funds were advanced after that date; and, second: That this issue was raised by Arkansas Louisiana for the first time on appeal. We consider both of these arguments to be without merit. A security interest cannot attach under Ark. Stat. 85-9-204 (1) until value is given and the debtor has rights in the collateral, and, in any event, it is important only to determine whether the security interest attached *before* the goods became fixtures. The significant time in determining the extent of priority is the time the goods were affixed to the real property, for it is only after this has been done that a prior mortgagee may be induced to make further advancements by seeing the fixtures in place.

Arkansas Louisiana Gas Company pleaded that its lien was superior to that of appellants and prayed that the Court determine the nature and extent of its rights

in the property. We consider this to be sufficient to raise the issue at the trial level.

Appellee Monarch Mill & Lumber Company, a materialmen's lien holder, argues that the appeal should be dismissed because appellant A. F. House had no beneficial interest in any of the notes and mortgages assigned to him, and cites Ark. Stat. 27-801 which requires every action to be prosecuted in the name of the real party in interest.

It is true that House held only the bare legal title to these instruments, that he gave no consideration for them and that they were assigned to him merely for reasons of convenience. We do not agree, however, that this deprives him of standing to prosecute this action. House held these instruments as an assignee in trust. Ark. Stat. 27-804 provides that the trustee of an express trust may bring an action without joining with him the person for whose benefit it is prosecuted.

One of the primary purposes of "real party in interest" statutes is to prevent defendants from being harassed by different suits arising from the same cause. See *Pitts* v. *Crane,* 114 Ore. 593, 236 P. 475. The real party in interest, therefore, is generally considered to be that person who can discharge the claim on which suit is brought and not necessarily the person ultimately entitled to the benefit of the recovery. There can be little doubt that an adjudication of the rights of A. F. House as trustee of these notes and mortgages will be equally binding on his assignor, Modern American Mortgage Company.

The cases cited by Monarch, holding that in a suit to foreclose a deed of trust both the trustee and the owner of the indebtedness are necessary parties, are distinguishable. When a deed of trust is used as a security device, the trustee holds the security and the beneficiary holds the indebtedness. Clearly they must both be par-

ties to an action to foreclose the security and satisfy the indebtedness. Such a split ownership does not exist in this case, however. .ppellant House owned legal title to both the notes and the mortgages.

This case must be reversed and remanded for determination of the amounts advanced under each construction money mortgage prior to and after the goods were affixed to the realty in question, for similar determinations in connection with the mechanics' and materialmen's liens, and for establishment of priorities of liens on the fixtures and on the remaining real property in accordance with this opinion.

FOGLEMAN and BYRD, JJ., disqualified.

LeROY AUTREY, Special Justice, joins in the opinion.