BOB CHILDS, D/B/A BOB CHILDS REALTY
COMPANY *v.* WESLEY PHILPOT ET UX

5-6093                                                     487 S.W. 2d 637

Opinion delivered December 11, 1972

*Hartje & Hartje,* for appellant.

*Clark, Clark & Clark,* for appellee.

JOHN A. FOGLEMAN, Justice. This case originated as a suit by Bob Childs Realty Company, Inc., against Wesley Philpot and his wife for a real estate commission. The plaintiff alleged that defendants (appellees) engaged the services of Bob Childs Realty Company, Inc., to sell a tract of real estate and that, after the expiration of the 90-day exclusive listing of the property with plaintiff, appellees sold the property to purchasers under such circumstances that plaintiff was entitled to recover the commission specified in the listing contract. It was alleged that the sale of the property by appellees resulted from, or was based upon, information given by, or obtained through, the agent, with notice to the owner, during the term of the contract. Appellees answered denying that allegation. They also alleged that the plaintiff was not entitled to recover any commission because it was not a licensed real estate broker. By an amendment to the answer, appellees alleged that the plaintiff was non-existent. The plaintiff later admitted that "Bob Childs Realty Company, Inc." had never been licensed as a real estate broker or salesman in Arkansas. Thereafter, a pleading denominated "Amended Complaint and Response" was filed by "Bob Childs d/b/a Bob Childs Realty Company, Inc.," admitting that the real estate business conducted by Childs had never been incorporated, and alleging that his doing business in the corporate name was without intent to defraud or mislead anyone, and did not result in any loss to appellees or constitute fraud or misrepresentation. In the same pleading Childs alleged that he was a licensed real estate dealer in Arkansas under the name of "Bob Childs Realty Company" and that appel-

lees were estopped to deny the corporate existence of the plaintiff originally named in the complaint. Appellees moved to strike this pleading asserting that no procedure existed by which Bob Childs, an individual, could be substituted as plaintiff, and that Childs could not recover from appellees in his individual capacity without instituting a new action by filing a new complaint and causing a summons to be issued. The chancellor denied this motion and treated the case as if Bob Childs individually, Bob Childs Realty Company, Inc., and Bob Childs, d/b/a Bob Childs Realty Company were the plaintiffs.

The chancery court, after hearing the evidence, decreed that the complaint be dismissed "because of plaintiff's failure to comply with § 71-1301, et seq., Ark. Stat. Ann. [(Repl. 1957)]." The chancellor made specific findings that the sale resulted from information obtained through "the plaintiff, as a real estate agent, for the sale of said lands," that Childs at all material times operated as a corporation, although all steps necessary to incorporate had not been completed, and that appellees were not estopped from pleading the lack of a real estate license as a defense.

For reversal, appellant argues that the trial court erred in finding that he operated as a corporation and consequently was to be treated as such and in failing to find that appellees were estopped to deny the corporate existence of appellant. We find that the court erred in holding that Childs was barred from recovery because the nonexistent corporation had no real estate license. Appellant could not benefit, however, if we held that appellees were estopped from denying the corporate existence of Bob Childs Realty Company, Inc., because appellant does not even assert that the real estate license had been issued to such a corporation, either de jure or de facto. Childs, in his amended complaint, plainly alleges that the license was issued to him, an individual doing business as Bob Childs Realty Company, and we find nothing contradictory in the record.

In reaching his conclusion, the chancellor based his holding upon the fact that Childs operated as a corporation in the transaction. The evidence shows only that Childs contemplated incorporating his real estate agency and made some effort to start the proceedings but did not follow through with the idea. The contract sued on was drawn by an employee of Childs. It designated the agency by the corporation name, and a sign identifying Childs' office also used that name. No evidence of any other acts on the part of Childs to incorporate the business appears in the abstracts of the evidence. Consequently, there was neither a corporation de jure nor a corporation de facto. The necessary requisite to the existence of a corporation de facto lacking here is an actual attempt to organize a corporation. *Watts* v. *Commercial Printing Company,* 177 Ark. 525, 7 S.W. 2d 24. There must be at least a colorable compliance with statutory requirements by taking some of the statutory steps. *Doyle-Kidd Dry Goods Company* v. *A. W. Kennedy & Company,* 154 Ark. 573, 243 S.W. 66. Even the signing of articles of incorporation, a step apparently never reached here, is not a sufficient step in the act of incorporation to meet the requirements for declaring a corporation de facto. *Harris* v. *Ashdown Potato Curing Assn.,* 171 Ark. 399, 284 S.W. 755.

Therefore, in order to bar Childs from recovery of the real estate commission to which he was otherwise entitled, the circumstances must have been such as to bring into being a "corporation by estoppel." A "corporation by estoppel" has no real existence but is a fiction for the purpose of a particular case and can arise only from actions and conduct of parties which place them in such a position that they will not be permitted to deny the existence of the corporation. 8 Fletcher, Cyclopedia Corporations 191, §§ 3889-3891; 18 Am. Jur. 2d 615, §§ 74, 75; 18 C.J.S. 503, 509, §§ 108, 110. This doctrine has been severely criticized. 8 Fletcher, Cyclopedia Corporations 191, § 3889. It rests wholly upon equitable principles and operates only to protect those who would otherwise suffer loss or incur liability because of their reliance in good faith upon the representation of corporate existence. *Doyle* v. *Mizner,* 42 Mich. 332, 3 N.W. 968 (1879); 8

Fletcher, Cyclopedia Corporations, Cum. Supp. 1971, 10, § 3938; 18 C.J.S. 515, Corporations, § 111d. The doctrine should be applied only where there are equitable grounds for doing so, but never where it would be inequitable. It should not be applied unless it would be inequitable not to do so. 8 Fletcher, Cyclopedia Corporations 194, § 3897, 18 C.J.S. 515, § 111d. See *Montoya* v. *Hubbell,* 28 N.M. 250, 210 P. 227 (1922).

Before an equitable estoppel may be applied, the party asserting estoppel must have relied to his detriment or prejudice upon the representations, acts or conduct of the one against whom estoppel is invoked. *Bowlin* v. *Keifer,* 246 Ark. 693, 440 S.W. 2d 232. In other words, the courts of Arkansas generally will not apply an equitable estoppel unless the actions or conduct relied upon caused the innocent party to assume a different position than he would otherwise have or it would be otherwise inequitable to permit the person estopped to change his position. *Schlumpf* v. *Shofner,* 210 Ark. 452, 196 S.W. 2d 747; *The Exchange Bank & Trust Co.* v. *Gibbons,* 228 Ark. 454, 307 S.W. 2d 877. There is no evidence to show that appellees suffered any detriment, prejudice or change of position in reliance upon the apparent corporate status of the real estate agency with whom they contracted. In a closely parallel case, the United States Circuit Court of Appeals for the Ninth Circuit, where Nevada law was applicable, held that an individual plaintiff in an action upon a contract which was entered into in the name of a non-existent corporation rather than his own name was not estopped to sue because there was no proof that the defendant was injured or misled as a result of such misrepresentation. *El Ranco, Inc.* v. *First National Bank of Nevada,* 406 F. 2d 1205 9th Cir. (1968). We think that logic and reason dictate the application to the case at hand of the equitable principles above stated and applied in the case just cited. Consequently, we find that Childs was not, under the circumstances, estopped to sue on the contract.

We consider *Benton-Bauxite Housing Coop, Inc.* v. *Benton Plumbing, Inc.,* 228 Ark. 798, 310 S.W. 2d 483, relied upon by appellees, to be readily distinguishable.

In that case the prospective incorporators of a proposed corporation were seeking to avoid liability for a debt for plumbing and gas piping installed in houses being constructed on land owned by the incorporators under a contract with the nonexistent corporation. The landowners had received full benefit of the contract. The court found that there was a preponderance of the evidence showing that the proposed corporation was a subterfuge through which the landowners sought to defraud the plaintiff and defeat its lien on the property. There was clearly a detrimental reliance there, and equitable principles demanded the application of estoppel under those circumstances.

Appellees urge an affirmance here upon the ground that the trial court correctly dismissed the complaint because Childs, individually, should not be permitted to recover upon the amendment to the complaint filed by him, after the lack of a corporate charter had been disclosed. A portion of appellees' argument is inconsistent in that in one breath they rely upon the want of corporate existence and in the next they assert that Childs and Bob Childs Realty Co., Inc., are two entirely separate and distinct entities. Perhaps there would be merit in appellees' contention, if there were any indication that they were prejudiced in any way by the procedure. Such a situation might arise if there were any question about the propriety of venue, the application of a statute of limitations, priorities among claimants, or other such issue. See *Davis v. Chrisp*, 159 Ark. 335, 252 S.W. 606, cert. denied, 263 U.S. 710, 44 S. Ct. 36, 68 L. Ed. 518 (1923), appeal dismissed for want of jurisdiction, 267 U.S. 572, 45 S. Ct. 227, 69 L. Ed. 793 (1924); *Floyd Plant Food Co. v. Moore*, 197 Ark. 259, 122 S.W. 2d 463; *Edwin Schiele & Co. v. Dillard*, 94 Ark. 277, 126 S.W. 835.

Our statutes require than an action be prosecuted in the name of the real party in interest. Ark. Stat. Ann. § 27-801 (Repl. 1962). There is no doubt about Childs, individually, being the real party in interest. Since one of the primary purposes of this statute is to prevent defendants

from being harassed by different suits arising from the same cause, the real party in interest is considered to be that person who can discharge the claim on which such suit is brought and not necessarily the person ultimately entitled to the benefit of the recovery. *A. F. House, Trustee* v. *Long,* 244 Ark. 718, 426 S.W. 2d 814. Under Ark. Stat. Ann. § 27-806 (Repl. 1962) all persons may join in one action as plaintiffs if they assert any right to relief jointly, severally or alternatively in respect of, or arising out of, the same transaction, if any question of law or fact common to all of them will arise in the action, and judgment may be given for one or more of the plaintiffs according to their respective rights. In *Hall* v. *Robins,* 212 Ark. 803, 207 S.W. 2d 746, we recognized the legislative intention to liberalize procedure by this act, to the end that rights or liabilities incidental to or growing out of common or related transactions may be adjudicated in a single suit, if an adverse party is not deprived of a substantial right.

Under § 27-814, the court may determine any controversy between parties brought before it, when it can be done without prejudice to the rights of others, but when such a determination cannot be made, without the presence of other parties, the court must order them brought in. Arkansas Statutes Annotated § 27-1160 (Repl. 1962) provides:

> The court may, at any time, in furtherance of justice, and on such terms as may be proper, amend any pleadings or proceedings by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case; or when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved. The court may likewise, in its discretion, allow an answer or reply to be made after the time limited by this Code, or by an order, enlarge such time. And whenever any proceeding taken by a party fails to conform in any respect to the provisions of this Code, the court may permit an amendment of such proceeding, so as to make it

conformable thereto. And when the allegations of a pleading are so indefinite or uncertain that the precise nature of the claim or defense is not apparent, the court may require the pleading to be made definite and certain by amendment. The court must, in every stage of an action, disregard any error or defect in the proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect.

We are firmly committed to a liberal construction of these statutes to permit the prosecution of an action by the real party in interest. In *Sarna* v. *Fairweather*, 248 Ark. 742, 453 S.W. 2d 715, the question of the capacity of a plaintiff to sue at the time of the institution of her suit arose. We said:

Appellant argues that appellee had no capacity to sue because the chose in action which was the subject of the litigation was not her property at the time the suit was filed. We find this contention to be without merit. We have put substance above form in procedural matters, at least since the adoption of our Civil Code. Appellant does not demonstrate how he was prejudiced by the admission of this document into evidence. If he had plead surprise and asked for time to prepare to defend against this unforeseen development, or even to investigate the circumstances of the execution of the late assignment, he might well have been entitled to a continuance for that purpose. See St. Louis I. M. & S. Ry. Co. v. Power, 67 Ark. 142, 53 S.W. 572; Williams v. Uzzell, 108 Ark. 241, 156 S.W. 843. We have been rather liberal in permitting actions to be prosecuted by the real party in interest. See Ark. Stat. Ann. § 27-801 (Repl. 1962). We permitted the holder of a note by delivery without written assignment to sue in his own name under the statute. Webster v. Carter, 99 Ark. 458, 138 S.W. 1006. In House v. Long, 244 Ark. 718, 426 S.W. 2d 814, recognizing that the primary purpose of our statute was to prevent harassment of defendants by different suits upon

the same cause, we said that the real party in interest is generally conceded to be that person who can discharge the claim on which suit is brought. At the time Margueritte Fairweather offered the later assignment in evidence, she was the person who could discharge the claim, if the assignment was valid. In the absence of any showing of prejudice, or attack upon the assignment, we would submerge substance with form if we sustained the objection made by appellant.

It is true that we have held that the statutes do not permit the substitution of one party for another in cases where to do so would be prejudicial to an adverse party. See *Edwin Schiele & Co.* v. *Dillard,* supra; *Davis* v. *Chrisp,* supra; *Floyd Plant Food Co.* v. *Moore,* supra. In each of those cases the substitution would clearly have been prejudicial to substantial rights of the adverse party, and each may be distinguished from the case at hand. In *Edwin Schiele* v. *Dillard,* we did state, as dictum, that, even though the court may in its discretion allow additional parties plaintiff to be added or struck out, it could not allow an entire change of parties, for to do so would be tantamount to a new suit between entirely different parties. In that case a suit was brought against a defendant as a corporation and a garnishment issued. It developed that the defendant was a partnership. After other creditors had issued garnishments against the same debt which was the subject of plaintiff's garnishment, plaintiff sought to amend its complaint to make the partners parties and to have the cause of action relate back to the date of filing of the original complaint in order to preserve the priority of its garnishment. To do so would have prejudiced the rights of other garnisheeing creditors. We properly held that the plaintiff's suit against the partnership dated from the date of filing of the amended complaint and the issuance of a summons against the parties.

In *Davis* v. *Chrisp,* we held that our statutes were not broad enough to authorize a substitution of a new party defendant for one against whom the plaintiff had no right of action for personal injuries. The substituted defen-

dant was prejudiced by reason of the fact the plaintiff's cause of action had expired before the new party was brought in. The original defendant was a railroad company, and the new party was the agent of the government under the World War I Federal Control Act.

In *Floyd Plant Food Co.* v. *Moore,* the original complaint was filed by a corporation which was the payee in certain promissory notes executed by the defendant. At the time of the filing of the suit, the statute of limitations had not run, but the note had been taken over by a parent corporation, and the plaintiff corporation had been dissolved. When the parent corporation sought to be made a party plaintiff by an amendment to the complaint, the statute of limitations had run. Not only would the defendant have been prejudiced by being deprived of the defense of the statute of limitations if this amendment had related back to the filing of the original complaint, but the allegations of the amendment and subsequent pleadings by the parent corporation would have effectively established that the corporations were not identical but two separate entities. We pointed out that under the holding in *Foster-Holcomb Inv. Co.* v. *Little Rock Publishing Co.,* 151 Ark. 449, 236 S.W. 597, a substitution would be permissible where the original party and the new one constituted a single entity. We also relied in part upon authorities holding that the statutes did not permit the substitution of a "stranger" for the sole party in the case.

We think the *Foster-Holcomb* case is peculiarly applicable here and that its rationale sustains the action of the chancellor, who remarked after overruling appellees' motion to dismiss that if the motion were granted, "we would be back here about this time next year trying the case" and that he was unwilling to take the chance that this eventuality would not occur. We incorrectly stated in *Floyd Plant Food Co.* v. *Moore* that, in the *Foster-Holcomb* case, an amendment had been permitted substituting Little Rock Publishing Company, the owner of the Arkansas Democrat, for that newspaper as a party defendant. Actually, the suit was brought in the name of "Arkansas

Democrat." Its complaint alleged that "the Arkansas Democrat is a corporation engaged in printing and publishing a newspaper at Little Rock." There was a motion to dismiss based upon the allegation that "Arkansas Democrat" was not a name under which suit could be prosecuted. After the statute of limitations had run, an amendment to the complaint was filed alleging that the Arkansas Democrat was a newspaper owned by Little Rock Publishing Company, a corporation, and substituted the name of the corporation as plaintiff. We held that the trial court properly permitted the amendment to the complaint under the first sentence of Ark. Stat. Ann. § 27-1160. We there pointed out the breadth of the statute and the liberal construction given it by this court, and quoted with approval the following language from *Midland Valley Rd. Co.* v. *Ennis,* 109 Ark. 206, 159 S.W. 214:

> Under this section the court may, in its discretion, before the commencement of the trial, allow a complaint to be amended so as to change the cause of action to another one which might have been joined in the same action, and at any time during the progress of the trial may permit an amendment which does not change substantially the claim, so as to conform to the facts proved. The only limitation in the statute is that, after the proof is introduced, the pleadings can not be amended so as to substantially change the cause of action.

The evidence here clearly establishes that the agency with which appellees dealt was Bob Childs Realty Company, a proprietorship of Bob Childs rather than a corporation, and that the word "Inc." was not properly a part of its name. The allegations of the amended complaint were that Childs had never incorporated but that the complaint should have properly been styled Bob Childs, d/b/a Bob Childs Realty Company, rather than in the corporate name, all the while admitting that Childs had done business under the corporate title used in the original complaint. The preponderance of the evidence clearly sustains these allegations. Bob Childs was not a stranger

substituted for the sole plaintiff, there were not two distinct entities and the change permitted by the amendment was not a change of the real parties in interest. We pointed out in *Davis* v. *Chrisp*, that we had recognized in *Arkansas Land & Lumber Company* v. *Davis*, 15 Ark. 541, 244 S.W. 730,[1] that every change in designation of parties did not amount to a change of the real parties in interest. In that case, the plaintiff had instituted an action for damages against John Barton Payne, Director General, and John Barton Payne, Federal Agent under the Federal Transportation Act, when James C. Davis was both Director General and Federal Agent. When Payne filed a plea in abatement stating that he was not, at the time the complaint was filed, Director General, plaintiff then made a motion to substitute Davis as a defendant. Davis entered his appearance and pleaded the statute of limitations. We held that the trial court erred in sustaining the plea of the statute of limitations, saying that there was no substitution of parties, because the amendment only made specific that which was not apparent before, and it was certain from the record that no prejudice to the defendant resulted. We also pointed out that in *Snowden* v. *Thompson*, 106 Ark. 517, 153 S.W. 823, where suit was brought in the name of the directors of a drainage district, who alone had the authority to bring the suit, the failure to name the district as plaintiff was a defect of form only, and it was the duty of the trial court to permit the complaint to be amended to conform to the statute which required suit in the name of the district.

The only prejudice suggested by appellees, when their motion to dismiss was denied, was that the plaintiff, in order to maintain the action, must be a licensed real estate agent or broker. The chancellor's prediction was

---

[1] This case was eventually reversed in *Mellon, Director General* v. *Arkansas Land & Lumber Company*, 275 U.S. 460, 48 S. Ct. 150, 72 L. Ed. 372 (1926), but the result was reached by holding that the suit was not brought in compliance with the Federal Transportation Act which permitted suits to be brought against the government within the period of limitation prescribed by state statute. The United States Supreme Court held that the substitution of parties after the statute of limitations had run was not in compliance with the requirements of the Transportation Act and that the action was barred by the statute of limitations. Of course, neither a federal statute nor the statute of limitations is involved here.

doubtless correct. If he had considered that appellees' right to plead Ark Stat. Ann. § 71-1301, et seq., was such that permitting the amendment would have prejudiced appellees and granted the motion, Childs would doubtless have immediatay filed a new suit as an individual, and the court, at a later date, would have been trying the same issues. To have granted the motion under these circumstances would have materially elevated form above substance, so we find no error in this respect.

Appellees also argue that the evidence does not support the finding that the eventual sale resulted from or was based upon information given by or obtained through the agent, with notice to the owner, during the term of the listing agreement, as required by the terms of the listing contract. Gary Langley, a restaurant owner, who now operates a cafe on the premises, testified that he asked the eventual purchasers, Glover Joyner and Bob Banister, to buy the property so that he could lease it from them. According to Langley, he first talked about the purchase with Wesley Philpot, who could not recall the name of the realty company with whom the property was listed, but did state the proposed purchase price to be $25,000, although the listing was for $28,000. Langley said he later talked to Jerry Lancaster of the Childs Realty Company on at least two occasions. Still later, Langley talked with Mr. Philpot, who then stated that he would not even talk about selling the property until the contract with the realtor expired, after which, according to Philpot, he would be "out from under the realty company." Langley had proposed to Joyner and Banister that they buy the property and lease it to him, and stated that Joyner called Lancaster and made an offer for the property. Lancaster advised that Philpot would not sell at the price offered. Both Joyner and Banister told Langley that they would buy the property for $22,500, if he could arrange the purchase at that price. Langley asserted that the purchase of the property by Joyner and Banister in December 1971 was the result of Langley's efforts. Philpot admitted to Langley that he had received an offer at a price that was not satis-

factory to him. Lancaster confirmed the rejection of the Joyner offer by Philpot, which he said was for $20,000 plus the real estate commission. He stated that Philpot knew who had made it. Philpot denied this. Lancaster recalled talking with Langley about the property on five or six occasions. Joyner admitted making the offer to Lancaster and stated that Langley conducted all negotiations concerning the purchase. According to Joyner, he had never met or communicated with Philpot until the day the sale was closed. Philpot admitted postponing the sale until the listing agreement expired, and said that he would have never sold the property for $22,000 if he had known that he would have to pay a commission. This commission had been specified in the listing at 6%. We cannot say that this evidence preponderates against the chancellor's finding.

The decree is reversed and the cause remanded for entry of a judgment against appellees in favor of Bob Childs in the sum of $1,320 with interest at the rate of 6% per annum from December 6, 1971, the date of the sale, and the proper application of the funds held in the registry of the court.